HAMITER, Justice.
 

 On June 10, 1946, defendant, Anthony Rankins, was indicted by the Grand Jury of Cameron Parish for the murder of one Ivory li. LaSalle, the latter having died from knife wounds inflicted on March 23, 1946. The accused, as well as was the deceased, is a member of the colored race.
 

 Trial under the indictment commenced October 16, 1946, during which defendant took the position that he did not cut or stab the decedent, and at its conclusion two days later there was returned a verdict reading, “We the jury find the defendant guilty as charged without capital punishment.” Thereafter, the court ordered that the defendant be imprisoned in the State Penitentiary for the balance of his natural life at hard labor.
 

 Defendant appealed, and in this court his counsel relies on a number of bills of exceptions for a reversal of the conviction and sentence.
 

 Isaac Andurs, a prospective juror, while being examined on his voir dire, mentioned that he was an uncle of the defendant. By reason of this relationship the State moved, and the court ordered, that he be excused for cause; whereupon defense counsel expressed a desire to question him. The court refused this privilege (when the State objected to the questioning), and a bill was reserved. The trial judge is vested with much discretion in determining the competency of jurors with respect to the matter of relationship, and that discretion will not be interfered with except when abused. No abuse appears here. It can reasonably be assumed that the relationship of uncle and nephew would have influenced the prospective juror in reaching a verdict. Code of Criminal Procedure Articles 345 and 351, Section 2; State v. Scarborough, 152 La. 669, 94 So. 204.
 

 Complaint is next made to the court’s overruling of defense counsel’s objection to the following question propounded by the State to each of three prospective jurors: “Do you have any professional or business relationship with counsel for the defendant ?” By the question, obviously, the State was merely seeking to determine whether the juror would be fair and impartial, and it in no manner prejudiced the defendant, es
 
 *798
 
 pecially since it was answered in each instance in the negative.
 

 Another bill was reserved to the •court’s permitting the State to challenge peremptorily G. J. Gauthier and H. G. Trahan after they had been accepted and sworn .as jurors, but before the jury was empaneled and before the State and defendant had exhausted their respective challenges. The bill is without merit. The court’s ruling is ■supported by the decision in State v. Thornhill, 188 La. 762, 178 So. 343, in which the identical issue was determined. See also Louisiana Code of Criminal Procedure Article 358.
 

 Error is assigned to the district judge’s refusal to permit Dr. S. O. Carter, ■Coroner of Cameron Parish, to testify as to .an alleged dying declaration of the deceased.. When that witness was questioned under cross examination by defense counsel concerning an utterance of the deceased occurring immediately prior to his death, the State ■objected, insisting that the proper foundation for admitting it had not been laid and also urging that its admissibility must be determined out of the presence of the jury. Whereupon the jury was withdrawn and, in •its absence, the State, defense counsel, and the judge examined Dr. Carter at length. 'The witness testified that while the deceased •was dying the'latter’s brother on two occasions, about a minute apart, whispered something in his (decedent’s) ear, then stepped .back and said: “Tell the doctor who stabbed you”; that the decedent said nothing following the first suggestion, but after the second he uttered the word “Vester.” (Vester, it appears from the record, is a brother of the defendant.) Further, Dr. Carter testified positively that when the utterance occurred the decedent “was not in his mind,” “was not rational,” “was suffering from severe shock,” “was not conscious,” “did not know what he was saying.”
 

 Following the examination of the witness, the court ruled that the utterance should be excluded from the jury. The ruling, we think, was correct. Unquestionably, Dr. Carter was competent to determine whether or not the decedent was rational when the utterance was made. Since 1893, when he was graduated in medicine from Vanderbilt University, he has actively engaged in the practice of his profession; for many years he ha's held the position of Coroner of Cameron Parish; and he had known the deceased since birth. It being true then that the decedent was unconscious and irrational, as Dr. Carter testified, his utterance was not admissible as a dying declaration. In support of this conclusion are the following comments found in Wharton’s Criminal Evidence:
 

 “Section 548. Competency of declarant as witness. The rule is well settled that nothing is admissible in a dying declaration that would not be admissible had the declarant been sworn' and testifying as a witness. As testimony, the dying declaration stands upon the same footing as though
 
 *800
 
 uttered by a witness called into court and then examined. Dying declarations cannot be used as a means of removing any disqualification that might have affected the competency of the declarant as a witness. Thus, the declarations of a child are not admissible where he was of such tender years that it could not be reasonably said that he could comprehend a future state; but where he is of an intelligent mind, fully comprehending the nature of an oath, his declarations made under a sense of impending dissolution are admissible. Likewise, if the declarant was insane, his declarations should be excluded; but in a doubtful case, the question of sanity should be left to a jury. While the rule is settled that dying declarations must relate only to the transaction which resulted in the declarant’s death, yet, with this limitation, they are admissible as fully, and to the same extent, as the testimony of the declarant would have been, had he been called as a witness.”
 

 “Section SSI. Declarant’s mental capacity at time of making declaration. Since the admissibility of a dying declaration is measured by whether or not the declarant would be competent to testify as to the facts contained in the dying declaration, such statements must be the utterance of a sane and rational mind. A witness may testify as to the consciousness or sanity of .one making a dying declaration, and it is not required that such witness be an expert; he is, however, subject to cross-examination as to his means of knowledge covering this point. In considering whether or not the declarant was in such a mental state at the time of making a dying declaration as to entitle such declaration to admission in evidence, resort may be had to all the circumstances of the case, and expressed utterances are not necessary to such a determination. Dying declarations generally are made while the declarant is suffering great mental and physical pain, and the fact that one is able to hear questions, and give intelligent answers thereto is very strong evidence of mental lucidity. But, on the other hand, when it appears, for example, that the declarant is. suffering severely from shock, and is under the influence of large doses of morphine, and the statements in the declaration are disconnected and irrational, the declaration should not be admitted.
 

 ti
 
 }¡c íjí
 
 ij
 

 Another bill of exceptions was reserved when the court denied defense counsel’s motion to discharge the jury, he having contended that a complete separation of the jury had occurred. In his per curiam, with reference to this bill, the district judge states:
 

 “ * * * After Court adjourned for noon recess, the Jury was taken into the Jury room, and then was being conducted to the restaurant. It was self-evident that all of the Jurors could not come out of the door of the Jury Room at one time, consequently, some of them were in the Court
 
 *802
 
 Room while some still remained in the Jury-Room. There was a Deputy Sheriff in front of the Jurors and a Deputy Sheriff at the back of them. There was no evidence of tampering with the Jury, and nobody apparently spoke to the Jurors except the counsel for the defendant. In our opinion, no possible damage could have been done and the defendant was not prejudiced by the Jury’s conduct.”
 

 The only separation occurring, as shown by the judge’s comment and also by the testimony of the jurors themselves, was when the jury, while attended by two deputy sheriffs, was walking from the court room to the adjoining jury room. Not only was this separation momentary, during which no outsider had an opportunity to communicate with the jurors, but also it was necessary. Hence, the defense motion was correctly denied.
 

 While the defendant was under cross examination, after he had voluntarily taken the witness stand and had testified that he did not stab or cut the deceased, the State propounded several questions relating materially to his actions immediately prior to, at the time of, and shortly after the occurrence of the stabbing, the purpose of these questions being to test defendant’s credibility. Over objections urged by defense counsel, on the ground that the specific subject matter of the questions was not referred to during the direct examination, the court required defendant to answer. The ruling, to which defense counsel reserved a bill, was correct. “When a person accused * * * becomes a witness, such witness shall be subject to all the rules that apply to other witnesses, and may be cross-examined upon the whole case.” Louisiana Code of Criminal Procedure, Article 462; State v. Sanderson, 169 La. 55, 124 So. 143; State v. Bryan, 175 La. 422, 143 So. 362.
 

 Several other bills of exceptions were taken by defense counsel during the course of the trial, all of which we have carefully considered and find without .merit. We deem a discussion of them unnecessary for the reason that they are not seriously urged in this court.
 

 Following the return of the jury’s verdict, defendant moved to quash the indictment, complaining that no colored persons were on the Grand Jury indicting him. The trial judge properly overruled the motion, as coming too late, under the authority of State v. Wilson, 204 La. 24, 14 So.2d 873, appeal to the United States Supreme Court dismissed 320 U.S. 714, 64 S.Ct. 202, 88 L.Ed. 419.
 

 A bill was reserved also to the court’s overruling of what is termed a “Motion for a new trial and annulment of the verdict of the jury.” We find no error in the ruling. The motion contained principally a summarization of the objections previously urged.
 

 ■ Finally, in his motion in arrest of ■judgment defendant complained only of the
 

 
 *804
 
 overruling of his discussed motions to quash the indictment and for a new trial. It presented nothing new and was properly denied.
 

 The conviction and sentence are affirmed.