HAMITER, Justice.
 

 . In case No. 3082 on the docket of the Fifth Judicial District Court in and for West Carroll Parish the defendant, Robert Layton, stood indicted for the murder, on February 18, 1949, of one Jim Ward. Also therein a Lunacy Commission, appointed on the application of defendant, filed reports pronouncing him presently sane and sane at the time of the alleged commission of the crime. But before commencement of the trial all of the proceedings had in that cause, including the indictment and the mentioned reports, were set aside and vacated by the court on appropriate motions tendered by defense counsel.
 

 Later a new Grand Jury returned another indictment charging defendant with the same offense, and thereunder proceedings were conducted in cause No. 3099 (the instant prosecution) on the docket of the above named court. Among these was defendant’s motion for a Lunacy Commission which was granted, the court appointing thereto the three physicians who had served in cause No. 3082. This commission reexamined the defendant and submitted reports similar to those originally filed.
 

 On the trial of cause No. 3099, in which the defense of insanity was offered, the jury found defendant guilty as charged. Thereafter motions for a new trial and in arrest of judgment were filed, submitted and overruled, and defendant was sentenced to death in the electric chair.
 

 This appeal followed. For reversal of the conviction and sentence defendant re-' lies on sixteen formal bills of exceptions, appended to two of which are per curiams of the trial judge.
 

 Bill of exceptions No. 1 was reserved to the court’s overruling an objec
 
 *67
 
 tion to the appointment on the Lunacy-Commission of the same physicians who had served in cause No. 3082. In a per curiam to this bill the trial judge states: “It was not possible to appoint all new doctors, as the law requires the Coroner to be one. The former proceedings were set aside purely on legal technicalities. There was no charge of interest, bias, prejudice or incompetence on the part of any of the doctors. Therefore the same doctors, because of their prior examination and study of the case would be in a much better position to serve than new ones.”
 

 Defense counsel argue here that the three physicians so appointed were not disinterested within the meaning of Article 267 of the Louisiana Code of Criminal Procedure for the reasons that (1) the name of one of them was listed on the back of the indictment as a state witness, and (2) each of them out of professional pride would have a natural and human inclination to maintain his previous finding of sanity in cause No. 3082. This argument is not impressive. The above codal articles specifically states that the members of the Lunacy Commission “shall be summoned to testify at the trial and shall be examined by the court, and may be examined by counsel for the state and the defendant.” The mere listing of their names as witnesses on the back of the indictment, therefore, would not indicate that they are disqualified to serve. As to the second assigned reason it cannot be assumed that the members of this Commission, all of whom are reputable physicians, would wilfully violate professional ethics by refusing to change their medical findings in the event a later examination warranted a different conclusion.
 

 Disinterested physicians within the contemplation of the law, obviously, are those who are free of prejudice and bias and are not directly interested in the outcome of the prosecution. No showing has. been made that the members of the Commission in question were otherwise.
 

 Bill of exceptions No. 2 was taken when the court refused to vacate the Lunacy Commission’s reports filed in this cause, defense counsel having contended in their motion that such reports were based on an insufficient examination of defendant of only about 30 minutes duration made subsequent to the second appointment. With the ruling we find no error. In making the instant reports the Commission was guided not only by the examination to which counsel refer but also by the previous and very thorough examination which it conducted some 30 days before under the appointment in cause No. 3082. The conducting of two examinations, unquestionably, was to the advantage of defendant, not to his disadvantage; and the Commission correctly considered both in rendering its reports.
 

 Bill of exceptions No. 3 was reserved to the court’s overruling of a motion to traverse the findings of the Lunacy Commission respecting the present sanity of defendant. The evidence adduced in
 
 *69
 
 connection with such motion indicates that the defendant, at the time of the trial, was afflicted with psycho-neurosis (a nervous disorder attended with fears and anxieties) ; however, it also shows that he was able to differentiate between right and wrong, to understand the proceedings against him, and to assist in his own defense. We cannot conclude, therefore, that in overruling the motion the trial judge abused the discretion with which he is vested.
 

 Bill of exceptions No. 4 was reserved when the court on May 17, 1949, ordered defense counsel to file all pre-trial motions or exceptions by May 19, 1949, the objection urged thereto being that a sufficient time for the filings had not been allowed. The bill is without merit. The order in no manner injured defendant as is clearly shown by the judge’s per curiam, reading: “The accused was first indicted early in March and again on May 2nd. The case had been before the Court on many occasions. On May 19th exceptions were filed as ordered. No further ' time was requested. Had counsel then have asked for additional time, giving valid reason, the court would have granted a reasonable additional delay.”
 

 Bill of exceptions No. 5 was taken to the overruling of defendant’s motion to quash the indictment, the motion having set forth four grounds of attack. First, defendant averred that the indictment charges no crime known to the laws of the. State of Louisiana. Stripped of the unessential verbiage it recites that on February 18, 1949, “ * * * he, the said Robert Layton, murdered Jim Ward * * This recital substantially complies with the short form authorized in Article 235 of the Criminal Code of Procedure, as last amended by Act No. 223 of 1944. Next, the motion to quash alleged that the correct name of the decedent was James Ward, not Jim Ward. This ground seems to have been abandoned; it is not urged here. Nevertheless, the name Jim, it is commonly known, is simply a short form for the name James. The third ground of attack on the indictment is that the Jury Commission’s procés verbal, which evidence the manner of selecting the Grand Jury, stated that the actions were in compliance with the provisions of Act No. 135 of 1898,
 
 as amended by Act No. 58 of 1914;
 
 whereas such amendatory act deals with the holding of elections, not the selection of grand juries. The error in the procés verbal of citing the wrong amendatory act clearly was both typographical and harmless. Undoubtedly the statute intended to be cited was Act No. 58 of 1904; and the citation was followed by the comment: “and all other Acts now effective.” The fourth ground, which is equally untenable, is that the correct name of one of the appointed Jury Commissioners is not discernible (whether “Stewart” or “Steward”) from the court’s written order; and that one James M. Steward took and signed an oath of office which had been prepared in
 
 *71
 
 the name of James M. Stewart. There is no showing that James M. Steward, who took the oath of office and served on the Commission, was not the person intended to be appointed by the court. The motion to quash, therefore, was correctly overruled.
 

 Bill of exceptions No. 6 was reserved when the court permitted (over defendant’s objection) the district attorney to peremptorily challenge one T. B. Blackwell after he and nine other jurors had been accepted by both the defense and the State. Defense counsel concede that ordinarily it is within the discretion of the court to allow either side to peremptorily challenge jurors up to the time the jury is impaneled. Article 358, Code of Criminal Procedure; State v. Thornhill, 188 La. 762, 178 So. 343; State v. Boone, 194 La. 977, 195 So. 511; State v. Rankins, 211 La. 791, 30 So.2d 837. But they say that the instant bill presents an extraordinary situation by reason of (1) certain circumstances occurring prior to the making of the challenge and (2) prejudicial remarks of the district attorney at the time. The mentioned circumstances are that Blackwell, the third juror accepted by both the State and the defense, had been closely associated throughout most of the day with other selected jurors who later actually tried the case, he having been with them during at least two recesses in the jury room and at lunch. The record does not show, however, that this association was injurious to defendant. Blackwell testified that whenever they left the court room the judge instructed them as to the conduct to pursue, and that there had been no discussion of the case during the recess and lunch periods. The remarks of the district attorney when challenging Blackwell, to which defense counsel further make reference, were that the State had received information, not available at the time of the voir dire examination, that Blackwell had a fixed opinion. These remarks, the court minutes disclose, were not objected to by defense counsel; rather, the objection offered was directed to the State’s peremptory challenge of Blackwell “without reason or cause shown.” To satisfy that objection, as well as for the benefit of the court, the district attorney made his remarks announcing the reason and cause for the challenge at that time. It would seem that the defendant, in view of the nature of his objection, has no right to complain. Nevertheless, we do not find the remarks prejudicial.
 

 Bills of exceptions Nos. 7 to 14, both inclusive, relate to questions propounded by the district attorney to the members of the Lunacy Commission, all of which concerned the examination and findings of the Commission under its appointment in the first case (No. 3082). Defense counsel, in their objections, urged that the physicians could be questioned on
 
 *73
 
 ly about their acts and experiences occuring after the appointment in the instant case. There is no merit to the objections. As before shown the Commission correctly considered both examinations in rendering its reports; and, this being true, their former acts and findings were relevant, material and admissible. Furthermore, the questions would have been proper even if the physicians had not been testifying as members of the Lunacy Commission. The appointment of a Commission does not preclude the State or the defendant from calling expert witnesses to testify on the question of sanity at the trial. Article 267 of the Louisiana Code of Criminal Procedure.
 

 Bill of exceptions No. 15 was reserved to the refusal by the court to grant defendant’s motion for a new trial, the motion containing 18 paragraphs of assigned reasons.
 

 Paragraph one, by alleging only that the verdict is contrary to the law and the evidence, presents nothing for review.
 

 • Paragraphs two to nine, both inclusive, reiterate the various bills of exceptions hereinabove described, discussed and determined.
 

 Paragraphs 10, 11 and 12 relate to alleged prejudicial remarks of the district attorney in his argument to the jury. But the objections to the remarks were waived by defense counsel’s failure to reserve bills of exceptions at the time of their occurrence. Article 510, Code of Criminal Procedure.
 

 Paragraph 13 of the motion for a new trial challenges, for the first time, certain qualifications of five of the petit jurors. The. record' does not show, however, that any of those jurors answered falsely on their voir dire examination to any questions touching their qualifications. “The incompetency of a juror, from whatever cause arising, must be urged before the juror is sworn in, and cannot be set up for the first time after verdict unless the juror should have answered falsely on his examination as to the special disqualification subsequently set up by the accused.” Article 355, Code of Criminal Procedure.
 

 In paragraph 14 complaint is made that, in violation of Article 394 of the Code of Criminal Procedure, the jury was taken on several occasions from the court room to places where the possibility of outside communication was always present, particularly to the .courthouse square at a point near which were parked automobiles containing numerous persons and also to a crowded restaurant in the Town of Oak Grove. Since the record contains no proof of attempted communication with or influencing of the jury, the complaint is without merit. State v. Ledet, 211 La. 769, 30 So.2d 830, and cases therein cited.
 

 In paragraph 15 defendant alleges that he was deprived of a fair and
 
 *75
 
 impartial trial “ * * * because of the fact that throughout his said trial he was closely guarded by the Sheriff of the Parish of West Carroll, State of Louisiana, and five (S) or more deputies, each of whom wore a side arm or a pistol which was exposed to public view; that the said Sheriff and his said deputies were at all times stationed within a short distance of the Jury and in close proximity to the defendant with their side arms or pistols exposed to the view of the Jury and to all of the people in the court room, and at least two (2) of said officers were at all times sitting or standing beside the defendant Ms Ms Ms
 
 »
 

 The evidence taken on the hearing of these allegations shows that at times during the trial (but not always) there were as many as seven law enforcement officers in the court room, these being the Sheriff, his five deputies, and a State Highway Patrolman, and that in most instances they carried side arms or pistols. But it does not appear that these officers were there only for the purpose of guarding the defendant, as suggested. Rather, according to the evidence, they were needed and used to handle the exceedingly large crowd present throughout the trial, especially at the several entrances to the court room; to carry out the instructions and orders of the judge; and to care for the jury. As to the side arms or pistols, the record shows that they are usually worn by the police officers at trials' of this kind and that no undue display of them was made here.
 

 In paragraph 16 defendant asserts that he was not present in open court during all of the stages of his trial and that as a result thereof he was deprived of his legal and constitutional rights. With respect to this assertion (also made in a motion in arrest of judgment) defense counsel argue that the minutes of May 19, 1949, and June 23, 1949, do not affirmatively show his presence at important stages on those days. Our appreciation of those minutes is to the contrary. But if they be insufficient the essentials were later supplied, during the hearing of the motion for a new trial, when the judgment ordered and stated as follows:
 

 “In the event that any minutes of this court fails to show the presence of the accused party at any time during the trial, let such minutes be corrected to show his presence for the reason that at every stage of the proceeding the defendant was actually present in open court, together with his counsel.
 

 j}» *!» ¥ ijs jji
 

 “The court further states that it will give counsel for and the defendant at this time, or at any time requested, an opportunity to show the incorrectness of any minutes which shows that the defendant was (not) present during any of the stages of the proceedings.” (Parenthesis ours.)
 

 Defense counsel did not avail themselves of the opportunity thus provided.
 

 
 *77
 
 ■ [20] In paragraph
 
 17 oí
 
 the
 
 motion
 
 for a new trial defendant alleges that error was 'Committed and he was greatly prejudiced when the district attorney told the jury in his opening statement that the defendant had made a confession to him and to. the Sheriff in the Parish jail at Oak Grove, and when thereafter, during the trial, he made no effort to produce proof of that confession. Assuming that error was thus committed by the State, the objection thereto offered for the first time in the motion for a new trial came too late. •The error was discoverable by defense counsel at the completion of the State’s case, at which time they should have made .'known to the. judge their complaint or objection, obtained a ruling thereon, and (if ¡adverse) reserved a bill of exceptions. Their failure to so act constituted a waiv,er of the objection. Code of Criminal Procedure, Articles 509(4), 510, 514.
 

 The final paragraph (18) of the motion ■for a new trial only makes general reference to the preceding 17 paragraphs.
 

 Bill of exceptions No. 16 was taken to the overruling of a motion in arrest of judgment. Like paragraph 16 of the motion for a new trial, it presents a complaint that the court minutes do not affirmatively show defendant’s presence in court at all important stages. We have heretofore discussed and ruled on this complaint.
 

 For the reasons assigned the conviction and sentence are affirmed.