HAMITER, Justice.
 

 To show some of the factual background' of this prosecution, which is for an offense-allegedly occurring in the City of New Orleans, we quote the following from the brief of defense counsel: “Vincent Riviere, a. young white man of about 29, * * * was returning from frog hunting on June
 
 7y
 
 1952, when he became involved in a traffic-argument with three negroes who refused move over and permit him to pass when he sounded his horn. On arriving at Dumaine- and Claiborne where they were both stopped, for a traffic light, one of the negroes (according to the testimony of a State witness) cursed and abused Riviere * * *. Thereupon Riviere got out of his car, took a
 
 .22
 
 rifle from the rear that he had used in his frog hunting and shot toward the truck of the negroes. This case involved solely and only one of the negroes, Ulysses Joseph,.
 
 *117
 
 -who * * * testified that he was not struck ***,*** the testimony disclosed that of the other two negroes one was completely untouched, while the third received a slight wound, whether from the grazing of a bullet or from the breaking of his windshield it is not known.”
 

 Charged in a bill of information with attempted murder, Vincent Riviere was tried by a jury of twelve and found guilty of that •offense. Thereafter, the State filed another bill of information (under LSA-R.S. IS :- 529.1) in which it alleged him to be a multiple felonious offender. And at the trial held under the multiple bill, with respect to which counsel for the State and the defense stipulated that all allegations of fact contained therein were true and correct, he was held to be guilty as charged. The defendant, thereupon, was sentenced to serve the balance of his life at hard labor in the Louisiana State Penitentiary.
 

 Appealing from his convictions and sentence the defendant filed in this court a transcript containing seven signed bills of •exceptions. However, at the time of oral argument and submission of the appeal defense counsel announced reliance on three •of such bills and an abandonment of the remainder. Although we shall discuss hereinafter only the three bills relied on, the remaining or abandoned four have been carefully examined and found to be without merit.
 

 Addressing ourselves first to a complaint respecting the trial judge’s action in finding appellant presently sane, the record discloses that upon the filing of a plea of insanity a commission was appointed to look into and report on the accused’s mental condition, it having been composed of Dr. Nicholas Chetta, the coroner, and Dr. Edmund Connely, a psychiatrist. After having made several lengthy examinations, these physicians submitted a written report in which they declared him to be sane. Too, they later testified at a hearing, conducted to permit a rebutting of their finding, to the effect that presently the accused is able to distinguish between right and wrong, to appreciate the usual natural and probable consequences of his acts, and to understand the proceedings against him and assist in his defense. True, they thought him to be a “constitutional psychopath”. But they explained that such term does not imply insanity; it relates to a person who, being capable of judging and controlling his actions, has unstable emotions and gets into all kinds of trouble because of his indifference to results.
 

 Defendant, on the other hand, offered at the hearing the testimony of certain relatives and friends and also of' Dr. H. Randolph Unsworth, a psychiatrist. The lay witnesses believed him to be mentally unsound because he was highly nervous and he angered easily over trifles, particularly noises and when some one sought to direct his activities.
 

 Likewise entertaining the opinion that defendant is presently insane, Dr. Unsworth
 
 *119
 
 testified at length at the hearing and, further, he furnished a written report which was admitted in evidence. The basis of his opinion is substantially and briefly set forth in the following extract quoted from such report: “From a psychiatric interpretation, this man is unquestionably mentally ill. Though he is oriented and unquestionably knows the difference between right and wrong, the nature of his mental illness is such, on a compulsive basis, that he is totally without will power to avoid carrying out his compulsiveness when he so becomes involved. I cannot completely discard the possibility that he could be involved in a paranoid schizophrenic illness, in which he is periodically directed in his criminal behavior by hallucinatory or delusional material.”
 

 The law presumes that every man is sane. State v. Seminary, 165 La. 67, 115 So. 370, State v. Toon, 172 La. 631, 135 So. 7. And to warrant the sustaining of a plea of present insanity, thereby preventing trial of a criminal action, it must appear by a preponderance of evidence that the accused is so mentally deficient that he lacks capacity to understand the nature and object of the proceedings against him and to assist in the conducting of his defense in a rational manner. LSA-R.S. 15:267; State v. Genna, 163 La. 701, 112 So. 655; State v. Seminary, supra; State v. Estes, 212 La. 694, 33 So.2d 199; State v. Layton, 217 La. 57, 46 So.2d 37; State v. Swails, 223 La. 751, 66 So.2d 796. That this accused is thus incapacitated is not made to appear by any of the evidence adduced — not even by the-testimony of the defense witnesses. Rather,, there is a substantial disclosure to the contrary. We are unable to conclude, consequently, that the judge erred in declaring him presently sane.
 

 The next bill of exceptions relied on by appellant was taken to the overruling of a motion for a new trial. In the motion he had charged (among other things) that the verdict of the jury was contrary to the law and the evidence is that the testimony disclosed provocation for the shooting and lack of premeditation; “that, under the law, and: considering the provocation, the total lack of premeditation and the fact that the complaining witness in this case was in no way harmed, there is absolutely no basis for a. verdict of attempted murder”; and that “under the circumstances, no reasonable man could have found defendant guilty of attempted murder, all of the testimony herein being made a part of this motion.”
 

 In the preparation of the transcript of appeal the testimony adduced at the trial' was not transcribed and included. But even-if it had been included no useful purpose-would be served thereby, for the motion for a new trial (as covered by the instant bill1 of exceptions) presents only a question of the sufficiency of evidence which is one for the jury and of which we are without jurisdiction. It, in other words, provides-nothing for review.
 

 In this connection, in their brief toi this court, defense counsel argue: “This bill
 
 *121
 
 of exceptions goes to the fact that a mere chance encounter, during which no one was injured (so far as this case is concerned; one other person was slightly scratched as set forth above), cannot, as a matter of law, sustain a verdict of attempted murder.” Murder, in so far as is pertinent here, is defined in LSA-R.S. 14:30 as the killing of a human being (1) when the offender has a specific intent to kill or to inflict great bodily harm. According to LSA-R.S. 14:31 a homicide which is otherwise murder, becomes manslaughter when the “offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self-control and cool reflection. Provocation shall not reduce homicide to manslaughter
 
 if the jury finds
 
 that the offender’s blood had actually cooled, or that an average person’s blood would have cooled, at the time the offense was committed”. Clearly, therefore, the question of reduction of the offense from murder to manslaughter by reason of provocation is one of fact exclusively for the jury. See also comments in connection with last cited statute (as given in Louisiana Criminal Code), State v. Senegal, 107 La. 452, 31 So. 867, and State v. Joiner, 161 La. 518, 109 So. 51.
 

 The third and final bill of exceptions urged here was reserved to the trial judge’s action in declining to recuse himself and to transfer the cause to another judge of the Criminal District Court for the Parish of Orleans. As grounds for recusation, according to the motion, appellant alleged that “the presiding judge has now become a material witness in this cause”, he thus invoking paragraph (3) of LSA-R.S. 15:303. The motion further recited that such presiding judge, being a member of the white race, attended a meeting on July 1, 1953 of members of the colored race and then and there accepted an honor in the form of a citation from the National Association for the Advancement of Colored People, thereby committing a mistake in judgment.
 

 The theory of the motion, as we appreciate it, is that by accepting the citation the judge rendered himself a subject for questioning by defendant, on a hearing of the motion to recuse, as to the reason for the honor; and, hence, be became a material witness. In this connection the judge states, in his per curiam: “In anticipation of his-motion to recuse, the defendant had issued out of the Clerk’s office of the Criminal District Court a subpoena for the court’s presence on the date the motion to recuse was heard. The court informed the defendant in open court that it declined to permit itself to be interrogated by defendant.”' And defense counsel, in their brief, say: “Naturally, the first question that would have been put to him had he testified would have been whether or not his ‘citation’ was given in connection with Appellant’s case
 
 %
 
 ‡
 
 if
 

 Obviously, paragraph (3) of LSA-R.S. 15 :303, invoked by defendant contemplates and refers to the judge’s being a
 
 *123
 
 material witness in the actual trial of the ■criminal cause before the court — not a witness at a hearing to determine whether he ■should be recused. Accordingly, since the motion did not allege facts constituting a legal cause for recusation, the trial judge, to whom it was addressed, properly and correctly overruled it. State v. Woods, 124 La. 738, 50 So. 671; City of Lafayette v. Milton, 129 La. 678, 56 So. 635; State v. Angel, 141 La. 921, 75 So. 843; State v. Laborde, 214 La. 644, 38 So.2d 371.
 

 For the reasons assigned the convictions and sentence are affirmed.