193 So.2d 505

**Johnny Daniel BEECHER**

v.

**STATE of Alabama.**

**8 Div. 208.**

Supreme Court of Alabama.

Oct. 6, 1966.

Rehearing Denied Jan. 12, 1967.

John B. Tally and H. O. Weeks, Scottsboro, for appellant.

Richmond M. Flowers, Atty. Gen., and Leslie Hall, Asst. Atty. Gen., for the State.

LIVINGSTON, Chief Justice.

Johnny Daniel Beecher, alias Johnnie Johnson, alias Johnny Duke, was indicted by the Grand Jury of Jackson County,

Alabama, on July 29, 1964. The indictment contained three counts: Count 1 charged the defendant with murder in the first degree of Martha Jane Chisenall; Counts 2 and 3 were identical and charged the defendant with raping Martha Jane Chisenall on two different occasions. The two counts for rape were later nolle prossed. The appellant was tried on the count charging first degree murder, found guilty and sentenced to death.

The case comes to us under the Automatic Appeal Statute, Title 15, Sec. 382 (1) et seq., Code of Alabama 1940, Act No. 249, Gen.Acts 1943, p. 217, 1958 Recompiled Code.

The evidence tended to prove that at the time the murder was committed, the appellant was a prisoner of the State of Alabama, serving a sentence for rape, and was an escapee from Camp Scottsboro, a road camp located in Jackson County, Alabama.

On the morning of June 15, 1964, a crew of convicts, including the appellant, under the supervision of a Mr. Claude Sisk, a state convict guard, left Camp Scottsboro and proceeded to where they were then working. They stopped at a Mr. Roper's and got a keg of water, then went down to a barn, somewhere close to a mile away, and then stopped and started building a fence off the right of way of a highway. Mr. Sisk told appellant to go around the barn and pull up a post and bring it to him. Sisk turned around to cut some wire and missed appellant. That was when appellant "ran."

The place where appellant "ran" was some 9/10 of a mile from the home where Mr. and Mrs. Chisenall lived.

Mrs. Chisenall's body was found on June 16, 1964, some distance from her home. It was packed in a shallow hole and covered with dirt and leaves. She was blindfolded, her hands were tied behind her, and her feet were also tied together.

The defendant was arrested by officers of South Pittsburgh, Tennessee, on Wednes-day, the 17th day of June, 1964. On the same day, a complaint and warrant of arrest were issued and later served on appellant. In making the arrest, appellant was shot in the right leg. He was carried to the hospital in South Pittsburgh and given shots to ease his pain. A short time later that day he was put in an ambulance and carried to Kilby Prison, located just outside the City of Montgomery, Alabama. The place where he was apprehended is some 200 miles from Kilby Prison.

As above stated, the Grand Jury of Jackson County returned an indictment on July 29, 1964. On August 14, 1964, reputable counsel of Scottsboro, Alabama, was appointed by the trial court to defend the appellant.

A warrant of arrest, pursuant to the indictment, was issued on July 29th and shows that it was executed by arresting the appellant and delivering him to Kilby Prison on August 17, 1964 (as a matter of fact, appellant was in Kilby Prison when the warrant was served on him and had been there since June 17, 1964).

Certain preliminary motions were made by the court-appointed counsel and we will dispose of those matters first.

On September 2, 1964, the court-appointed counsel filed a petition praying that the appellant be committed to the custody of the Superintendent of Alabama State Hospitals under the provisions of Sec. 425 of Title 15, Code 1940 (1958 Recompiled Code), for the purpose of a sanity examination.

The trial court ordered this motion to be set down for hearing on September 9, 1964, at 1:30 p. m. The motion was heard on evidence ore tenus, was denied and overruled by the trial court on the 10th day of September, 1964.

■ The court is under no mandatory duty, upon application, to appoint a lunacy commission or to direct the Superintendent of the State Hospitals for the Insane to

examine a person charged with a capital offense and to make a report as to his sanity, but such action is discretionary with the presiding judge in the light of the evidence presented to him in connection with such application, and the overruling of the motion is not reversible error.

As pointed out by this Court in Aaron v. State, 271 Ala. 70, 122 So.2d 360:

"Section 425, Title 15, Code 1940, does not make it the duty of the presiding judge, upon application, to appoint 'not less than three reputable specialist practitioners in mental and nervous diseases' or the Superintendent of the Alabama State Hospitals to examine a defendant charged with a capital offense and make a report as to his mental condition. The making of such appointments are within the discretion of the presiding judge. Campbell v. State, 257 Ala. 322, 58 So.2d 623, and cases cited."

See also Ex parte State ex rel. Patterson (In re Silas Coma Garrett), 268 Ala. 524, 108 So.2d 448. There was no error in overruling appellant's motion.

The appellant is a member of the Negro race.

By motion to quash the indictment filed on September 2, 1964, and by plea in abatement to the indictment, filed on September 10, 1964, counsel for appellant raised the question of the systematic, intentional and deliberate exclusion of qualified Negroes, both from grand jury and petit jury service in Jackson County, Alabama. The motion to quash the indictment was set for hearing on September 9, 1964, and heard on evidence taken ore tenus before the court. On the 10th day of September, 1964, the trial court denied the motion to quash the indictment. By agreement of counsel for appellant and counsel for the state, the plea in abatement filed on September 10, 1964, was submitted on the same evidence as was the motion to quash the indictment. The plea in abatement was overruled on September 10, 1964. From the evidence,

the trial court found the following facts and entered the following judgment:

"Defendant in this cause has filed a motion to quash the indictment rendered in this cause by the Grand Jury of Jackson County, Alabama, on the ground of systematic, intentional and deliberate exclusion of members of the Negro race from service on the Grand Jury. Testimony has been heard orally by the Court in support of such motion, as well as the testimony of the State offered in opposition of same.

"This Court is aware of the rule which has been announced by the United States Supreme Court with reference to the systematic exclusion from jury service of members of the Negro race. The Court is further aware of its responsibility in regard to this defendant, who is a member of the Negro race.

"Defendant's evidence was, in the main, based on the testimony of two persons, Mr. Frank Grigg, the former Circuit Clerk of Jackson County, and Mr. B. B. McKenzie, the present Circuit Clerk of Jackson County. Mr. Grigg testified that he was the Circuit Clerk of said County for approximately 13 years, having assumed office in 1946, and terminating his service on January 19, 1959. Aside from other aspects of his testimony, it was clearly shown that a number of Negroes were at all times on the roll of jurors for said County, and that a number of them were called for jury service from time to time. He did state, however, that in all the years of his service, no Negro has served as a member of the Grand Jury in Jackson County, Alabama, to his knowledge. Mr. Grigg explained the procedure of selecting Grand Jurors from the jury panel, which procedure is set forth in Section 38 of Title 30, Code of Alabama, Recompiled in 1958. Mr. B. B. McKenzie the present clerk, testified that he had not known of a Negro serving on the Grand Jury of said County for the time he has served in the office of Circuit Clerk, but

he testified that a number of Negroes had been called for Jury service from time to time. There was also adduced certain aspects of evidence relating to the use of the letter "c" following the name of jurors to denote their color. It was the testimony of each of these persons that this practice had long since been discontinued, and that perhaps some cards in the jury box might have such a designation, but that such cards were few, and were perhaps holdovers from years past.

"Mr. Grigg, upon being re-called for further cross-examination by the State, testified that in his judgment some 35 to 50 names of Negroes were on the jury roll during his tenure of service, and that the jury roll consisted of an average of 1000 persons during his time. Mr. Grigg was asked to identify by name the Negroes who were on the 1957 jury roll. Mr. Grigg positively identified some 13 persons who were on this roll as Negroes, and stated that others perhaps were named whom he did not recall.

"'It was stipulated by counsel that the 1960 population figures were as follows: Total population for Jackson County in 1960—36,681. Of this number, the census report showed 2,231 to be Negroes.

"Judge W. J. Haralson, one of the Circuit Judges of the 9th Judicial Circuit of Alabama, testified that he had been a Judge in this Circuit for more than 23 years. He further testified that he had no independent recollection of a Negro serving on the Grand Jury of Jackson County, during this time, although Negroes had served on the Grand Juries of other Counties within the Circuit. He explained the manner in which Grand Juries are selected, and testified that they are drawn by lot from a hat, and that no method of selection is used. Judge Haralson testified that he was familiar with the fact that Negroes have been called to serve on the jury panels of the County, and that on occasions, no Negroes would be on the panel. He further testified that no method of selection is used in drawing jury panels, but that jurors are drawn from the jury box which make up the venire by lot.

"Mr. Ed Hastings, the present Chairman of the Jackson County Jury Commission, testified that at the time he was appointed, in 1963, there was an undetermined number of Negroes in the jury box. He further testified that additional names had been placed in the jury box since he became a member of the Jury Commission. He testified that the commission did not place any marking on the cards in the jury box which would indicate whether the juror was or was not a Negro. Mr. Hastings testified that at the time the Grand Jury was impaneled which returned the indictment under attack, that approximately 250 names of Jurors were in the jury box, and that some of this number were Negroes. The names of 9 colored men were added to the jury roll and placed in the jury box on the first Saturday in March, which was before the Grand Jury which returned the instant indictment was impanelled. Mr. Hastings further testified that an additional 160 names were added to the jury box on the first Saturday in September, 1964.

"Some question was raised as to when the names of 40 persons, all said to be Negroes, were added to the jury box. Mr. Hastings testified that these names were added on June 6, 1964, although the minutes of the Commission approving same as of June 6, 1964, were dated July 11, 1964.

"Other testimony which relates to these contentions was presented, and all has been considered by the Court.

"The question for the Court to decide is simply whether there has been a systematic, intentional or deliberate exclusion of Negroes from service on Grand Juries of Jackson County, and has the

rights of this defendant under the 14th Amendment of the Constitution been violated?

"This Court is most fully aware of the serious charge pending against this defendant. Like all other persons charged with a serious crime, and regardless of race, this defendant is entitled to a fair and impartial trial, free from all traces of prejudice and other influences outside the law. It is not only the responsibility of the Court, but the duty, to insure that this defendant is given a fair and impartial trial. This the Court fully intends to do. One cannot disregard his duty, nor can one shirk his responsibility.

"It is the judgment of the Court that the defendant's motion should be overruled. The writer is well aware of the system used in selecting jurors from the jury box. This Court judicially knows that no method of selection is used, but that names of the Grand Jury are selected at random, by lot, from the remaining jury venire after excuses are heard and granted. The Court has no way of knowing which of the jurors are colored. Even if there were some designation on the cards of some of the Negroes on the venire, the Court, once having drawn that card, would under no circumstances return it to the hat, but the name would be one of 18 drawn for Grand Jury service. We have heard testimony from one of the the other judges whose tenure is long, and whose service is honorable. Death has sealed the lips of the other Judge who ably served in this position of honor and trust. From this we have seen the practice of the past, and the writer knows of the practice now and at the time this Grand Jury was organized. The Court is of the opinion that every right of this defendant, and others, both white and colored, have been fully safeguarded.

"IT IS THEREFORE ORDERED, CONSIDERED AND ADJUDGED by the Court that the Defendant's motion to quash the indictment be and the same is hereby overruled.

"Done this the 10th day of September, 1964.

"/s/ Jack Livingston
"Circuit Judge, Ninth Judicial Circuit"

Although it was stipulated that the 1960 Federal Census figures for Jackson County showed a total population of 36,681, of which 2231 are Negroes, and 7 are listed as others, there was no evidence presented to the court to indicate the ratio of white males over 21 years of age as to Negro males over 21 years of age in the county, nor was there any evidence presented to the trial court to indicate the number of each race between the ages of 21 and 65 years.

It was further stipulated that on the jury cards which were drawn for the term of the week of September 21, 1964, there were no indications of race.

The total population figures for Jackson County indicate that Negroes make up approximately 6 per cent of the total population, which includes women and children as well as men. As above indicated, there is no breakdown as to the Negro male population in the county of age eligible for jury service. However, the evidence shows that approximately 6 per cent of the jury roll is made up of Negroes. Assuming, for the sake of argument, that the number of Negro males of jury eligible age is in the same ratio as the total number of Negroes is to the total population, then the number of Negroes on the jury roll is in exact proportion to the number of white males.

As was pointed out in the recent case of Swain v. State of Alabama, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed.2d 759, while Alabama law requires that jury commissioners place on the jury roll all male citizens over 21 who are reputed to be honest, intelligent men and who are esteemed for their integrity, good character, and sound judgment, failure to include the name of

every qualified person on the jury roll is not a ground to quash an indictment or venire, absent fraud or purposeful discrimination. In this case, Mr. Justice White stated in his opinion:

"A Defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit juries are drawn. * * * Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group."

Commonwealth of Virginia v. Rives, 100 U.S. 313, 322–323, 25 L.Ed. 667, 670–671; Cassell v. State of Texas, 339 U.S. 282, 286–287, 70 S.Ct. 629, 94 L.Ed. 839, 847; Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692.

Justice White further stated: "An imperfect system is not equivalent to purposeful discrimination based on race."

■ We are clear to the conclusion that the trial court did not err in refusing to quash the indictment and in overruling the plea in abatement. (As indicated above, the plea in abatement, though not heard at the same time the motion to quash was heard, it was stipulated by counsel for the defendant and the state that the plea in abatement should be submitted on the same evidence as that on which the motion to quash was submitted.)

■■ On September 15, 1964, appellant filed a motion to quash the indictment, based primarily on an improper joinder of the count for murder and the two counts for rape. This motion was properly overruled. Moreover, the record discloses that Counts 2 and 3, the counts charging rape, were nolle prossed by the state on the day the case was set for trial and before the case proceeded to trial on the merits. There was no error in overruling the motion, and if we be mistaken, the error was

harmless. Revised Supreme Court Rule 45. On the same day, appellant's attorneys filed a demurrer to the complaint. The demurrer was properly overruled because the complaint was substantially in code form.

■ The drawing of the special venire was begun on August 18, 1964, but the arraignment was continued after the filing of a demurrer and the arraignment was not completed until September 17, 1964, when appellant entered a plea of not guilty. He did not plead insanity. The trial of appellant was set for September 21, 1964, and he was tried on September 21 and September 22, 1964. Appellant objected to going to trial on the ground that a true and correct copy of the indictment had not been served on him.

The record shows the following:

"This is to certify that I have served a certified copy of the indictment and certified copy of the regular venire and special venire on Johnny Daniel Beecher, alias Johnny Jackson, alias Johnny Duke, by leaving certified copies with the defendant. This the 9th day of September, 1964.

"/s/ C. T. Dean, Sheriff."

There is no merit in this insistence. See also Revised Rule 25 of the Supreme Court of Alabama.

On September 21, 1964, attorneys for appellant filed additional grounds of demurrer to the indictment, raising substantially the same points raised in the previous demurrer. As we have pointed out, the indictment was substantially in Code form and the additional demurrer was overruled without error.

On September 21, 1964, attorneys for appellant filed motions for voir dire examination of the jury venire in panels of 12, panels of 4, and individually. These motions were overruled. On September 21, 1964, the court proceeded to qualify the jury, following which the attorneys for ap-

pellant presented the court with a list of questions, and requested the court to examine the members of the jury venire on such questions. Portions of the questions requested by appellant were asked and others were not.

Although Sec. 52, Title 30, Code 1940, 1958 Recompiled Code, confers on the parties the right, under direction of the court, within reasonable bounds, to examine prospective jurors touching matters which might tend to affect their verdict, it does not empower the parties to require the court to put such questions to the jury, and they cannot complain where they make no attempt to propound questions which the court refused to ask. Sims v. Struthers, 267 Ala. 80, 100 So.2d 23; Ballard v. State, 236 Ala. 541, 184 So. 260; Gholston v. State, 221 Ala. 556, 130 So. 69.

It is within the discretion of the trial judge as to whether he will question the venire of jurors as to matters which tend to show interest or bias not amounting to disqualification, whether or not he is requested by counsel to do so. In short, all of these matters lie within the sound discretion of the trial court. Avery Freight Line v. State, 258 Ala. 524, 63 So.2d 895. The trial judge's actions are presumptively correct, in the absence of a showing to the contrary. Ballard v. State, supra. There was no reversible error in these rulings.

The case then proceeded to trial and the jury returned a verdict of guilty of murder in the first degree and fixed appellant's punishment at death. On September 28, 1964, the court entered a judgment and sentence in accordance with the verdict of the jury. On the same day, the trial court appointed other reputable counsel of Scottsboro to represent the appellant on this appeal. These attorneys filed a motion for a new trial which contained 53 grounds. This motion was set for hearing on November 25, 1964, duly continued to, and heard on January 6, 1965. The motion was overruled and denied.

One proposition argued in brief, and presented by the overruling of appellant's motion for a new trial, is the legality of a warrant issued by the Solicitor of Jackson County, Alabama, and the fact that a preliminary hearing was not had under that warrant. As before stated, the appellant was arrested by officers of South Pittsburgh, Tennessee, on the 17th day of June, 1964, and turned over to the Sheriff of Jackson County, Alabama, and by the Sheriff delivered that day to Kilby Prison. On that day, the Solicitor of Jackson County, Alabama, issued a warrant of arrest on an affidavit signed by one V. P. Thomas. The appellant was later indicted by the Grand Jury of Jackson County, Alabama, on the 29th day of July, 1964, for the murder of Mrs. Chisenall.

The undisputed fact in the instant case is that the appellant was serving a sentence in the penitentiary of Alabama for rape, and was an escapee at the time Mrs. Chisenall was killed.

Under the particular facts in the instant case, when the appellant was delivered to the Sheriff of Jackson County, Alabama, he was in legal custody of the sheriff, who immediately carried him to Kilby Prison, from which prison he had escaped, and turned him over to the prison authorities. At all times pertinent to this question appellant was in the legal custody of state authorities, and serving a sentence for rape for which he had previously been convicted. To afford him a preliminary hearing under such circumstances would serve no useful purpose either for the appellant or for the state. Even if he had been afforded a preliminary hearing, he could not have been admitted to bail since he was already a convict on a previous charge, and moreover, we are not advised of any statute of this state, nor are we aware of any state or federal decision which requires a person arrested by an officer to be taken before a magistrate within a specified time after arrest. Aaron v. State, 271 Ala. 70, 122 So.2d 360. See also Garrison v. Johnston, 104 F.2d 128, 130

cert. den. 308 U.S. 563, 60 S.Ct. 107, 84 L.Ed. 465, rehearing den. 308 U.S. 636, 60 S.Ct. 137, 84 L.Ed. 529, citing Goldsby v. United States, 160 U.S. 70, 73, 16 S.Ct. 216, 218, 40 L.Ed. 343.

Appellant complains in his motion for a new trial of the presence of officers at the trial and the atmosphere created by said officers. On hearing the motion for a new trial, the Sheriff of Jackson County testified, in substance, among other things, that he was supposed to have sixteen officers about the courtroom; that was the number he asked to be there; that he hired two city officers as bailiffs and they were counted in the sixteen; there were other officers in uniform present who came to the trial; he estimated there were 20 or 25 officers present who were armed; some who were armed displayed their arms; the courtroom was full of people and the crowd was not too tense. This is not all of the sheriff's testimony, but we think it is sufficient to answer the question posed. The presence of law enforcement officers in and about the courtroom during the course of trial of a convict for a capital crime committed while he was an escapee from the penitentiary does not disallow him a fair and impartial trial. As was said by this Court in Smarr v. State, 260 Ala. 30, 68 So.2d 6:

"* * * It is not unusual for those engaged in the enforcement of the law to be present during the course of trials and certainly this record reflects no prejudice to defendant because of the presence of officers."

A similar view was taken by the Supreme Court of Louisiana in State v. Layton, 217 La. 57, 46 So.2d 37, 42–43, wherein it was held that in a murder prosecution, the evidence failed to show that the defendant was deprived of a fair and impartial trial because of the fact that throughout the trial he was closely guarded by the sheriff and several deputies, each of whom wore a sidearm or pistol which was exposed to public view. It must be borne in mind that this appellant was a convict under a previous sentence for rape. See Kelley v. State of Oregon, 273 U.S. 589, 591, 47 S.Ct. 504, 71 L.Ed. 790–792.

■ There is no impropriety in having an armed guard keep watch over defendant in a trial of defendant for first degree murder where the evidence shows that he is a desperate and dangerous character, and the fact that the accused is in the custody of officers wearing sidearms visible to the jury is not grounds for reversal in the absence of facts pointing more directly to probable prejudice. The same is true where there are a number of visibly armed officers, at least where the officers are there to handle a large crowd, not solely to guard the defendant, and where the arms are of the kind usually worn by police officers at trials and no undue display of them is made. 21 Am.Jur.2d, Criminal Law, Sec. 240, p. 278. It frequently is necessary that law enforcement officers be present at the trial of a criminal case, either to assist in maintaining order or to act as witnesses, or for other valid reasons, and it is generally recognized that the presence of such officers does not deny accused a fair and impartial trial. 23 C.J.S. Criminal Law § 971, p. 881, Note 9 and 10.

The foregoing insistence is without merit.

We come now to the confession introduced in evidence over the objection of the appellant.

■ The well-known and oft-repeated rule is that extra-judicial confessions are prima facie involuntary and inadmissible, and the duty rests in the first instance on the trial court to determine whether or not a confession is voluntary, and unless it so appears, it should not be admitted. Duncan v. State, 278 Ala. 145, 176 So.2d 840, and cases therein cited.

The state introduced evidence tending to show that no threats were made against the accused; that he was not physically mis-

treated; that he was not told that it would be better for him to make a confession, or worse for him if did not; that no reward was offered or held out to him to get him to confess, and that no inducement of any kind was made to him.

Counsel for Beecher examined the witnesses who so testified on voir dire.

The appellant did not take the stand, nor did he testify or offer any evidence that the confession was not voluntarily made. He did testify on the hearing of the motion for a new trial. The confession was admitted in evidence over the defendant's objection. There was no request made by counsel for appellant that the court determine the question as to whether or not the confession was voluntarily made, outside the presence of the jury. A discussion was held outside the presence of the jury, but the testimony and rulings thereon occurred in the jury's presence.

The confession in the instant case was made on June 22, 1964, in the hospital of Kilby Prison in the presence of two officers, and no one else. Before the confession was made, one of the officers present asked appellant if he wanted an attorney and he replied that he did not. This was denied by appellant in testifying on the motion for a new trial. The confession was reduced to writing by one of the officers and was signed by appellant, Beecher, who also initialed each page of the confession. The confession was in narrative form and is a detailed statement of appellant's actions after he escaped from the road gang on June 15, 1964 to the time he was apprehended on June 17, 1964. It would serve no useful purpose to set out the sordid details of the confession, and we refrain from doing so.

As above stated, the Grand Jury of Jackson County, Alabama, on July 29, 1964, returned an indictment against the appellant. The indictment contained one count for the murder of Mrs. Chisenall and two counts for the rape of Mrs. Chisenall on two separate occasions before she was killed.

The appellant complains that said confession dealt, "in the main, and in great detail, with the offense of rape, and only secondarily or anti-climactically with the offense of murder."

As heretofore noted, before the appellant was put to trial on the charge of murder in the first degree, the two separate charges of rape were nolle prossed. It is true that the confession introduced in evidence went into much sordid details as to when, how, and where appellant raped Mrs. Chisenall before he killed her. As before noted, the confession contained a detailed statement of the actions and movements of the appellant between the time he escaped from the road gang and the time he was apprehended, two days later.

Appellant argues that his mental and physical condition was such, on June 22, 1964, as to render his confession involuntary.

■ Appellant's testimony on the hearing of the motion for a new trial was not at all persuasive, and the trial court's action in overruling motion for a new trial on this point, in effect, rejected it, and we agree. From the other evidence adduced on the hearing of the motion for a new trial, we conclude that the confession was made, as the trial court evidently did, voluntarily and at a time when appellant was in full possession of his mental faculties. Jackson v. Deno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, 1 A.L.R.3d 1205; Vinzant v. State, 28 Ala.App. 220, 180 So. 736.

■ Appellant argues that the confession was inadmissible for that it contained details of the two rapes of Mrs. Chisenall and was highly prejudicial and inflammatory because he was not on trial for rape. The argument is not tenable for more than one reason: that he raped Mrs. Chisenall twice before he killed her, not only supplies a motive for the killing, but is so

closely related in time and sequence of events as to be a part of the res gestae, and was clearly admissible. There is no merit in this argument. Our conclusion is that the confession was admitted without error.

We take note of two recent decisions of the United State Supreme Court: Miranda v. State of Arizona (June 13, 1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, and Johnson v. New Jersey (June 20, 1966), 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882.

The holding in *Miranda* does not apply to this case. In *Johnson,* it was held that "Miranda applies only to cases in which the trial began after the date of our decision one week ago" (June 13, 1966). The trial in the instant case began September 21, 1964.

Also, in *Johnson,* it was held that Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) "affects only those cases in which the trial began after June 22, 1964, the date of that decision." The trial of the case before us began on September 21, 1964. Accordingly, *Escobedo* "affects" it.

"The rule is that extrajudicial confessions are prima facie involuntary and inadmissible and the duty rests in the first instance on the trial court to determine whether or not a confession is voluntary and unless it so appears it should not be admitted. Myhand v. State, 259 Ala. 415, 66 So.2d 544; Phillips v. State, 248 Ala. 510, 28 So.2d 542; White v. State, 260 Ala. 328, 70 So.2d 624; Hines v. State, 260 Ala. 668, 72 So.2d 296; Goldin v. State, 271 Ala. 678, 127 So.2d 375; Smitherman v. State, 264 Ala. 120, 85 So.2d 427." Duncan v. State, 278 Ala. 145, 176 So.2d 840, 855–856.

■ The fact that appellant was not represented by counsel when he made the confession did not, of itself, render the statement inadmissible. See Lokos v. State, 278 Ala. 586, 179 So.2d 714; Sanders v. State, 278 Ala. 453, 179 So.2d 35.

As above stated, the record shows that the confession was voluntarily made. The appellant's testimony on the hearing of the motion for a new trial is somewhat contradictory, and not at all convincing. Under the evidence, a factual issue was presented on the question of voluntariness. We think the evidence is sufficient to support a finding of voluntariness, and the confession was properly admitted in evidence.

We see no basis for reversing under the so-called "totality of circumstances" rule sometimes applied by the United States Supreme Court in holding confessions to have been improperly admitted. See Duncan v. State, 278 Ala. 145, 176 So.2d 840, 864, supra, and cases there cited.

■ In the closing arguments to the jury, the following transpired between Mr. Black, the Solicitor, and the attorney for appellant:

"Mr. Black: Did anyone take the stand and say that he didn't kill her?

"Mr. McGinty: We object to that statement, 'Did anyone take the stand and say he didn't kill her.' The Defendant has a right not to testify. We move for a mistrial.

"The Court: I overrule your motion.

"Mr. McGinty: We except."

This objection and motion comes within the rule recently laid down in Swain v. State, 275 Ala. 508, 156 So.2d 368, where it was said:

"During his summation to the jury, the solicitor made this statement: 'Gentlemen, do you think we have proved those three elements? I submit to you that it is not denied, there is not a word come from this stand that denied the charge of rape. We have proved it to you, gentlemen, beyond a reasonable doubt that this prosecuting witness was raped. * * *'

"Appellant objected to this argument, and moved for a mistrial, on the ground

that it 'was with reference to the fact that the defense offered no testimony.' The objection and motion were overruled and appellant excepted.

"Code 1940, Tit. 15, § 305, as amended by Act No. 124, appvd. June 23, 1949, Acts 1949, p. 150, provides as follows:

" 'On the trial of all indictments, complaints, or other criminal proceedings, the person on trial shall, at his own request, but not otherwise, be a competent witness; and his failure to make such a request shall not create any presumption against him, nor be the subject of comment by counsel. If the solicitor or other prosecuting attorney makes any comment concerning the defendant's failure to testify, a new trial must be granted on motion filed within thirty days from entry of the judgment.'

"The statute does not prohibit a prosecutor from drawing reasonable inferences from the evidence presented in a case, and statements to the effect that the evidence is uncontradicted or undenied are not prohibited by the statute. See: Welch v. State, 263 Ala. 57, 58, 81 So.2d 901; Thompson v. State, 41 Ala. App. 353, 357–358, 132 So.2d 386; Dixon v. State, 39 Ala.App. 575, 105 So.2d 354; Littlefield v. State, 36 Ala.App. 507, 63 So.2d 565, cert. den. 258 Ala. 532, 63 So.2d 573; Dickey v. State, 21 Ala.App. 644, 111 So. 426. In Welch v. State, supra, the following was approved as a correct statement of the law:

" 'It is generally held that a statement by the prosecuting attorney to the effect that the evidence for the State is uncontradicted or undenied is not a comment on the defendant's failure to testify.'

"We hold that the solicitor's argument was not violative of § 305, Tit. 15, as amended, supra."

The solicitor's argument in the instant case was not violative of Sec. 305, Title 15, as amended, supra.

We have answered all arguments made requiring discussion, have examined the record, and performed our duty under the Automatic Appeal Statute, Title 15, Sec. 382(1) et seq., Code 1940, 1958 Recompiled Code, and find no error to reverse.

Affirmed.

All the Justices concur.