211 So.2d 486

**Audie Lee SEAGROVES**

**v.**

**STATE of Alabama.**

**8 Div. 270.**

Supreme Court of Alabama.

May 23, 1968.

Rehearing Denied June 27, 1968.

 

Jas. M. White, Huntsville, for appellant.

MacDonald Gallion, Atty. Gen., and W. Mark Anderson, III, Sp. Asst. Atty. Gen., for the State.

KOHN, Justice.

The appellant, Audie Lee Seagroves, was. indicted and tried for murder in the first degree. The jury found him guilty and fixed his punishment at death. Judgment and sentence were in accord with the verdict.

The appeal here is under the automatic appeal law applicable to cases where the death sentence is imposed. Act No. 249, approved June 24, 1943, General Acts 1943, p. 217, carried in the 1955 Cumulative Pocket Part to Vol. Four, 1940 Official Code, and in the 1958 Recompiled Code as Title 15, § 382(1) et seq.

This case arises out of a rape and fatal shooting on the day of August 5, 1964.

The evidence shows that appellant, who at the time was a fifteen year old boy, ran away from his home on the morning of August 5, 1964. Thereafter, appellant's father, having discovered that appellant and a 22-caliber pistol were missing, went to the office of the Honorable John W. Green, Jr., Judge of the Family Court Division of the Circuit Court of Madison County, Alabama. Mr. Seagroves told the judge about appellant, but no warrant was issued at that time. Appellant had been in trouble before and was on probation at the time the alleged crime was committed.

The next morning, August 6, 1964, the body of the deceased was discovered and an investigation by the Huntsville police followed. The deceased was killed with a small caliber pistol.

On this same morning, Mr. Seagroves returned to the office of Judge Green and told him that his son, appellant, had not yet returned home. Judge Green directed him to go to the Huntsville police station and relate to them all that had transpired.

This he did, and a missing person's report was filed with the police. He then returned home and found appellant had also returned.

Appellant was picked up a short time later by Chief of Detectives Lee and Sergeant Patterson of the Huntsville Police Department. He was carried to the police station and was there turned over to Detective Stephens who questioned or, as the State contends, counseled him. The following conversation, according to the testimony of Detective Stephens at the pretrial hearing, was the result of this session:

"We went into the Chief's office and sat down and I asked Audie if he had anything he wanted to tell me. At that time he said he did not, but he became visibly shaken and nervous. And I had talked with him on a previous occasion concerning a family problem. He talked pretty easy with me then and that was the main reason for my interrogating him at this time. I asked him did he know we had a missing person's report on him at that time filed by his father and he stated that he knew that. I asked him did he know that his father's 22 pistol was missing from his home and he said he knew it was missing but he didn't know anything about it. I asked him to think this over very carefully. And then I asked the question again. He began to cry at this point and he said he did know the pistol was missing and that he did take the pistol from his father's home. He said—immediately after admitting taking the pistol, he said, 'But I didn't do anything with it.' I again asked him if he had anything more that he wasn't telling me that he would like to get off his chest. He sat there for at least two, maybe three minutes. I was standing in front of him and I turned and walked over and sat down in a chair. He stopped crying and then he said—he asked me, 'When did you find her?' I said, 'When did we find who, Audie?' He said, 'The woman on the mountain that I shot.' And I said, 'Are

you ready to tell us about it, Audie?' He said, 'Yes, sir, I won't give you any more trouble. * * *'"

Appellant then made an oral confession in which he admitted to raping and killing the deceased. Later, he made a detailed written confession admitting the same. At no time during these proceedings had he been warned of his right to remain silent or of his right to counsel. He was not warned that anything he said might be used against him. After this confession, appellant was arrested and was later found to be incorrigible by the Family Court Division of the Circuit Court of Madison County. This decision was upheld by this court in the case of Seagroves v. State, 279 Ala. 621, 189 So.2d 137.

This case was set for trial on February 27, 1967. On February 7, 1967, appellant filed a motion to suppress the State's evidence. The motion was heard by the trial court, and at the conclusion of the testimony the court overruled the motion as to the oral confession but sustained the motion as to the written confession and as to the introduction into evidence of a gun or pistol allegedly used in the commission of the crime.

A later filed motion for a rehearing on the motion to suppress the evidence was granted, but again the trial court denied the motion to suppress the oral confession. The trial of the case began on February 27, 1967, and during the course of the trial the oral confession was introduced and admitted into evidence over the timely objections of the appellant.

It is from these two rulings, the denial of the motion to suppress and the allowing of the oral confession into evidence, that the appellant takes this appeal. He contends that the trial court committed reversible error in making these rulings. We are compelled to agree.

The appellant bases his contention on the case of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. In this case, the court laid down certain guide-

lines which must be followed by investigating officers prior to any custodial interrogation. The court, in the opinion, stated:

"To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege, and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. * * *"

In the present case these guidelines were not followed, and these warnings were not given to the appellant prior to his oral confession. This we feel necessitates a reversal of the case due to the present status of the law. *Miranda,* supra.

The State, in an attempt to avoid the applicability of the *Miranda,* supra, warnings, argues that the appellant had not been "taken into custody" in the usual sense of the phrase, and that he was not being interrogated in connection with the murder but rather was being counseled about running away from home. There is no merit in this contention.

First, there is evidence in the record which indicates that the detective, who questioned the appellant, knew of the murder and that he was interrogating him in connection with an investigation of the murder. During the pretrial hearing to suppress the evidence, Detective Stephens in his stipulated testimony stated, in effect, that he, in connection with the investigation

of a murder, had a conversation with the appellant, Audie Lee Seagroves. The result of this conversation was the alleged confession of the appellant which was introduced and admitted into evidence. These facts bring the case squarely under the *Miranda,* supra, decision.

Even if we accepted the State's contention that the appellant was not in custody for the purpose of investigating the murder but rather for the purpose of being counseled about running away from home, we would still be bound by *Miranda,* supra. In a most recent United States Supreme Court decision, Mathis v. United States (May 6, 1968), 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed. 2d 381, the court held that it was not necessary for the person being interrogated to be in custody in connection with the case under investigation.

In Mathis v. United States, supra, the defendant was in the state penitentiary serving a state sentence when questioned by a United States Government agent in regard to some income tax returns he had filed. He was not given the *Miranda,* supra, warnings and at the trial the court admitted these statements into evidence. In reversing the trial court, the United States Supreme Court stated:

"The Government also seeks to narrow the scope of the *Miranda* holding by making it applicable only to questioning one who is 'in custody' in connection with the very case under investigation. There is no substance to such a distinction, and in effect it goes against the whole purpose of the *Miranda* decision which was designed to give meaningful protection to Fifth Amendment rights."

In light of the foregoing we hold that the warnings required by *Miranda,* supra, should have been given the appellant, and since they were not given, the trial court erred in not sustaining the motion to suppress the oral confession and, further, in allowing the confession to be received into evidence over the timely and proper objec-

tions of the appellant. For these reasons, the judgment should be reversed.

Reversed and remanded.

LIVINGSTON, C. J., and COLEMAN and HARWOOD, JJ., concur.