219 So.2d 646

**Cranston CARR**

v.

**STATE.**

**6 Div. 407.**

Court of Appeals of Alabama.

Dec. 10, 1968.

Rehearing Denied Jan. 14, 1969.

Fred Blanton and Roderick Beddow, Jr., Birmingham, for appellant.

MacDonald Gallion, Atty. Gen., and Marlin Mooneyham, Asst. Atty. Gen., for the State.

PRICE, Presiding Judge.

This is an appeal from denial of coram nobis.

Appellant was convicted on March 23, 1965, of the offense of murder in the second degree, and was sentenced to twenty years in the penitentiary. The conviction was affirmed by this court in Carr v. State, 43 Ala.App. 642, 198 So.2d 791, certiorari denied by the Supreme Court, 281 Ala. 716, 198 So.2d 798. Subsequently, the petition for writ of certiorari to the United States Supreme Court was denied. Carr v. Alabama, 389 U.S. 877, 88 S.Ct. 175, 19 L.Ed. 2d 165.

Appellant's brief sets out the question presented, as follows:

"Is an incriminating statement made by an accused in the custody of a Sheriff of a County to a newspaper reporter during an interview conducted with the permission of the Sheriff admissible against such accused, consistent with Escobedo v. Illinois, 378 US 478 [84 S.Ct. 1758, 12 L.Ed.2d 977] where the newspaper reporter did not advise defendant of the nature of the charge against him and of his constitutional rights to counsel and to remain silent under the Fifth and Sixth Amendments, Constitution of the United States, as the same are made applicable to the State of Alabama by the

operation of the Fourteenth Amendment?"

The testimony taken at the coram nobis hearing tends to show that the appellant was arrested and placed in jail in Double Springs around 11:00 o'clock, p. m., on October 6, 1964, for the shooting, earlier in the evening, of John Hilton, a police officer of Haleyville.

R. L. Shirley, a newspaper reporter for the Northwest Alabamian, testified he went to the jail between 10:30 and 11:00 A.M., the next morning, October 7, and obtained permission from Sheriff Raymond Cobb to interview the appellant. The witness had known Cranston Carr for fifteen or twenty years and they were close friends. Witness started out by telling Carr he would like to get a story of the shooting from him and Carr said he would talk to him about it. He did not tell Carr he was there with the permission of the sheriff, did not advise him of the nature of the charge; did not tell him anything he said could be used against him in court. He did not inform him that he had an absolute right to remain silent or that he had a right to counsel, and Carr said nothing about having counsel. Witness asked questions and Carr made little brief statements. During the interview Carr admitted that he had shot Mr. Hilton. Only the two of them were present at the conversation. He made no threats against Carr and did not make him any promises. He was there solely in his capacity as a newspaper reporter and was not asked by the sheriff or any other officer to talk to appellant. He stated he had found out the night before that Mr. Hilton had died as a result of the shooting. He did not inquire of Cranston Carr if he knew that John Hilton was dead. He just assumed he knew, but he found out later that Carr didn't know it at the time he was talking with him.

Raymond Cobb, Sheriff of Winston County, testified he did not remember whether or not Mr. Shirley talked to appellant before or after appellant had been questioned by his office, but he believed Officer Thomas questioned him "more on up to dinner." He was then asked about his testimony on the motion to suppress evidence wherein he testified that in his best judgment Shirley talked with Carr prior to State Investigator Thomas. He stated, "I don't honestly remember, but if that is what I swore there I'm satisfied it is right."

On cross examination by the State, Sheriff Cobb stated the events he was being questioned about happened four years before and he could not remember all the details. Carr had previously been a radio operator and jailer for the police department of the City of Haleyville.

On re-direct examination Sheriff Cobb stated that he testified on the main trial that Cranston Carr called an attorney, Jim Beech, after he had talked to Officer Thomas.

Roy Thomas, a Criminal Investigator for the State of Alabama, testified he talked with Cranston Carr between 9:30 and 10:00 o'clock A.M., on October 7, 1964, and that he informed Carr that John Hilton had died.

On cross examination this witness stated he first saw appellant about eleven o'clock the night of October sixth, and saw him again between 9:30 and 10:00 the next morning in the Sheriff's office. When witness told him Mr. Hilton had died he said he wanted to call an attorney. The Sheriff showed him the "phone" on the desk and told him he could call anyone he wanted to. He sat there a few minutes and finally made a telephone call. After he used the "phone," Officer Thomas advised him he didn't have to make a statement and asked if there was anything he wanted to say. He answered "no," and gave no statement about the shooting.

One of the cases cited by appellant is Evalt v. United States., 9 Cir., 359 F.2d 534, where appellant was interviewed, not

at his request, by two newspaper reporters at the jail and he was not warned of his constitutional rights. The court said: "The sheriff made Evalt available to them, and kept him under guard during the interview. This, we think, was action by the state, and therefore the constitutional guarantees apply to the interview."

The appellant here was not kept under guard during the interview and no one was present except Shirley and Carr. In Truex v. State, 282 Ala. 191, 210 So.2d 424, it is stated:

"We are constrained to agree with the Supreme Court of Nevada that the substance of Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964) and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 [10 A.L.R.3d 974] (1966) have no application when confessions or admissions otherwise admissible are given to persons who are not officers of the law nor their agents. Schaumberg v. State, Nev. 432 P.2d 500 (1967)."

We are of opinion Escobedo does not apply to the situation here. Miranda, of course, applies to trials begun after June 13, 1966. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882. The trial in this case commenced on March 22, 1965.

The judgment is affirmed.

Affirmed.

CATES, Judge (concurring).

Perhaps it is well that Judge PRICE has, in keeping with the excellent brief filed by the learned Assistant Attorney General, treated this appeal on the merits of the contentions in the Circuit Court.

Our writ of error coram nobis, however, like a narrow window, opens only on a restricted area.

First, it occurs to me that Carr patently knew of Shirley's testimony given on the trial of the indictment. 43 Ala.App. 642, 198 So.2d at pp. 792 and 793. He cannot say at this late date that his retained counsel were not aware of whatever "rights" were conferred by Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977, which was handed down June 22, 1964. Carr's original trial came well after Escobedo.

Under Escobedo, as construed in this State as well as in Wisconsin, we believe all of the following must conjoin:

1) The police have determined to accuse the defendant; and

2) They have taken him into custody; and

3) They carry out interrogation seeking incriminating statements; and

4) The defendant asks for an opportunity to consult with his lawyer; and

5) The police deny him or his lawyer, or both of them, the opportunity of such consultation; and

6) The "police have not effectively warned him of his absolute constitutional right to remain silent."

Then, the rule of exclusion works to keep out any "statement elicited by police during the interrogation."

I see no application of the totality rule. Davis v. State, 44 Ala.App. 145, 204 So.2d 490, was an appeal from a conviction.

Second, in coram nobis the petitioner must allege and prove that he had a valid defense to the indictment. Rickard v. State, 44 Ala.App. 281, 207 So.2d 422.

Perceiving no miscarriage of justice on the original trial, I consider that Carr is not due a back door retrial. Assurance to be made doubly sure has not been assimilated into our law of post conviction review.