224 So.2d 675

James ROBINSON

v.

STATE.

5 Div. 718.

Court of Appeals of Alabama.

June 30, 1969.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

Russell, Raymon & Russell, Tuskegee, for appellant.

PRICE, Presiding Judge.

James Robinson appeals from a conviction for the offense of burglary in the second degree with a penitentiary sentence of four years.

According to the State's evidence one Abb Doner operated a small grocery store in the "Washstand" or "Warriors Stand" community of Macon County, Alabama. On the night of September 8, 1967, he laid a trap for burglars by tying one end of a string to the trigger of a shotgun and the other end to the back door of his store.

The next morning the door was open and the gun had fired. Mr. Doner saw tracks around the door but so far as he could tell nothing had been taken out of the store.

Deputy Sheriff Ivory testified he was called to the store the morning of September 9th. The hook on the screen door was broken "and a splinter or something was on it, as if someone had messed with it in someway to unhook it. And the wooden door was standing open and there was a shotgun laying on the floor that was pointing out of the door. And of course, I checked the gun and there was a shell in the gun that had been fired." A portion of the edge of the wooden door was splintered off, "as if the shotgun had caught a portion of the front part of the door." He could tell the door "was pried open and the lock was busted with some type of instrument."

On cross examination the officer was asked if there was any evidence of any person having been in the store. He answered: "No, sir, I couldn't see any evidence where anyone had been in there. In other words, I don't think they never got in the store after the blast." He said that so far as he could tell no one went into the store.

The prosecuting witness, Doner, was permitted, over defendant's objection, to testify that defendant came to his store about three weeks later and said: "That's my first time I ever been in your store, that's my first time. If you help me get out of this, I will never go back in there no more." Responding to a question asked by the court, the witness said: "He said he broke in there."

Officer Ivory testified that after he left the Doner store on the morning of September 9th, he received a call from John Andrews Hospital that James Robinson was there suffering from a shotgun wound, and that he went to the hospital to investigate the shooting. The defendant was in bed with a wound in his hip. The witness stated it is customary for the hospital to make report to the police of persons admitted with shotgun wounds and the officer was there only for the purpose of checking on a man reported to have been shot. He testified defendant made a statement to him, whereupon a hearing was held outside the presence of the jury to determine the voluntariness of the confession. At this hearing Officer Ivory testified that James Robinson, when he saw him at the hospital, was not a suspect in the burglary of Doner's store. He questioned the defendant about how he got the shotgun wound, and defendant stated: "Mr. Ivory, I am in trouble. * * * I have been knowing you a long time and I wish you could help me out of this. I guess you already know about Mr. Doner's store being broken into. There is no need for me trying to say that I didn't do it, and I would like for you to help me out. * * * I went in the store," and Robinson began to name the persons with him, "and as you see, I got shot down there. It was the first time I ever did anything like this and I would appreciate anything you could do to help me out." The witness testified that defendant, at the time he made the statement, was not in custody or under arrest. The officer admitted he did not advise defendant of his right to remain silent or of his right to counsel or that anything he said might be used against him; that he did not suspect the defendant of being involved in a burglary and did not let the defendant know he already knew about Doner's store. The defendant was arrested a few days later.

The defendant took the stand at the hearing outside the presence of the jury, and testified the officer came to see him at the hospital and said: "Robinson, you know you are in a little trouble. * * * Do you know about that store down there? And I said 'Yes'. He told me Doner's store got broke in down there and a shotgun was shot down there * * * and he said, 'It must have been you, the one that got shot down there, because you were the one that came to the hospital last night about eleven o'clock, * * *' and I said, 'I didn't get shot down there because I haven't been in Doner's store,' And he said, 'If you will tell the truth, you will come out allright.' * * * He said that he would see a lawyer down there and see how much it would be and that he would come back and tell me how

much it is." The officer returned in about two hours and showed him a shotgun shell hull and said if defendant would make a statement he wouldn't have to go to jail and if he would tell him how it was he wouldn't need a lawyer, and that is when he made a statement. "I told him I got shot on the outside of the store standing on the outside of the door." On cross examination the defendant testified he didn't open the door, that "Them other boys &ast; &ast; &ast; Charlie Van and them," opened the door. Charlie Van didn't get shot. "If the gun is right at the door, it blowed a hole in me. I was on the outside."

Officer Ivory stated he went to the hospital the second time to check on a man who had been cut; that he stopped by defendant's room and found him asleep; that as he started out the door the defendant called to him and he told defendant he just came by to see how he was doing; that he did not have a spent shotgun shell with him.

Abb Doner, recalled for further cross examination, stated that he told officer Ivory when he first came to his store that he suspected James Robinson was the person who broke into his store.

The court announced he was holding defendant's statement made in the hospital to Officer Ivory was voluntary.

No predicate was laid tending to show the confessions made to Doner and Ivory were obtained without threats, promises of reward or inducements having been made to defendant.

■■ While it is not necessary to show the Miranda warnings were given when confessions are made to persons not officers of the law, Truex v. State, 282 Ala. 191, 210 So.2d 424, the burden is always on the state to establish that the confession was not obtained by threats, promises, hope of reward, or other inducements. Duncan v. State, 278 Ala. 145, 176 So.2d 840; Potter v. State, 44 Ala.App. 376, 209 So.2d 856.

■■ Officer Ivory admitted he did not give the warnings required by Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. While the defendant had not been arrested, he was being detained, and was not "free to go." Howard v. State, 44 Ala.App. 595, 217 So.2d 548. The fact that the officer said he was questioning defendant as to the manner in which he received the gunshot wound and not about the burglary of Doner's store did not relieve him of the duty of complying with the Miranda guidelines. Seagroves v. State, 282 Ala. 354, 211 So.2d 486.

■ The evidence does not sustain the finding that accused's statements were freely and voluntarily given, and they were improperly admitted in evidence.

■ The confessions were not admissible for another reason. Evidence of defendant's confessions is not admissible until the corpus delicti has been proven. See 6 Ala. Digest Criminal Law, ☞517(4) for numerous decisions. But in the absence of an objection or motion taking this point, error cannot be charged to the trial court in this respect.

■ To constitute burglary there must be both a breaking and an entering. Title 14, Sec. 86, Code of Alabama, 1940; Martin v. State, 44 Ala.App. 395, 210 So.2d 704. The breaking of the latch and opening the screen door, without entering beyond the wooden door, would not amount to burglary. State v. McCall, 4 Ala. 643. The following statement appears at pages 43 and 44 of Wharton's Criminal Law and Procedure, Vol. 2, Sec. 421; "Any penetration, however slight, of the space within the house by the defendant or by any part of his body or by any instrument inserted for the purpose of perpetrating a felony therein, is a sufficient entry &ast; &ast; &ast;."

"When entry is made by means of an instrument, it must be used for the purpose of effecting the felony, and not merely of

gaining entrance for the defendant. Accordingly, the act of prying open a door with an iron bar does not constitute an entry, as it is not used for the purpose of committing a felony therein, but merely of breaking."

The evidence that the door "was pried open and the lock was busted with some type of instrument" did not show an entry into the building.

 The State has the burden of proving the corpus delicti independently of defendant's confession before conviction can be upheld. Martin v. State, supra, and cases there cited.

In the absence of the purported admissions, which in our opinion confess a breaking and not an entering, there was no proof that a burglary was committed. The court erred in refusing to defendant the affirmative charge requested in writing.

Other questions raised will not be considered. They will probably not arise in the event of another trial.

The judgment is reversed and the cause remanded.

Reversed and remanded.