239 So.2d 230

**Ronald E. SMITH**

**v.**

**STATE.**

**4 Div. 14.**

Court of Criminal Appeals of Alabama.

Sept. 1, 1970.

Ira DeMent, Montgomery, for appellant.

MacDonald Gallion, Atty. Gen., and Walter S. Turner, Asst. Atty. Gen., for the State.

CATES, Judge.

Conviction of perjury during a non-felony trial, i. e., as a sworn witness in a hearing as to revoking appellant's probation. Sentence: five years. Code 1940, T. 14, § 377.

The instant indictment reads as follows:

"The Grand Jury of said County Charge that, before the finding of this Indictment Ronald E. Smith, alias Ronald Edward Smith, whose name is to the Grand Jury otherwise unknown, on his examination as a witness, duly sworn to testify by Roy O. Hill, Clerk of the Circuit Court of Houston County, Alabama, who had authority to administer such oath, on the trial or hearing for revocation of probation of the said Ronald E. Smith, alias Ronald Edward Smith, in the Circuit Court of Houston County, Alabama, under an arrest order issued by the presiding Judge of the 20th Judicial Circuit of Alabama charging that the said Ronald E. Smith, alias Ronald Edward Smith had violated the terms of his probation previously granted to the said Ronald E. Smith, alias Ronald Edward Smith, by the said Court in the case of State of Alabama vs. George E. Thomas, Jr. and Ronald E. Smith, in that the said Ronald E. Smith, in that the said Ronald E. Smith, alias Ronald Edward Smith had committed the offense of Impersonating an Officer in Clayton County, Georgia; falsely swore that he was an Honorary Deputy Sheriff in September, 1966, that a card commissioning him as an Honorary Deputy Sheriff in Long County, Georgia, had been issued

to him in the previous summer and that he had said card with him on September 21, 1966, the matters so sworn to being material and the testimony of the said Ronald E. Smith, alias Ronald Edward Smith being wilfully and corruptly false, against the peace and dignity of the State of Alabama.

> "William J. Baxley
> District Attorney
> of the 20th
> Judicial Circuit"

## I

We take the issue to turn upon (1) Smith's testimony; (2) its falsity; and (3) its materiality.

Falsity, vel non, revolves around whether Smith impersonated an officer in Clayton County, Georgia, being an offense. No proof was made of the law of Georgia as to the ingredients of this offense.[1]

Smith's demurrer assigns in Ground 7 the following:

> "7. For that the averment, Ronald E. Smith, alias Ronald Edward Smith, had committed the offense of impersonating an officer in Clayton County, Georgia; falsely swore that he was an honorary deputy sheriff in September, 1966 is vague indefinite and uncertain and does not apprise the defendant with sufficient certainty to defend the suit the time in which the crime of perjury occurred."

and in Ground 12 assigns:

> "(12) For that the allegation therein contained that, 'Ronald Edward Smith had committed the offense of impersonating an officer in Clayton County, Georgia',

is but a legal conclusion and is insufficient to apprise the Defendant of what officer he had impersonated and how and when he had impersonated any such officer."

The demurrers were by formal judgment overruled September 26, 1968. Thereafter, on November 19, 1968, issue was joined on Smith's plea of not guilty to the indictment.

Smith has previously appealed to this Court from the earlier judgment revoking probation. *Smith,* (4th Div. 617), affirmed September 12, 1967 on authority of Hemphill v. State, 41 Ala.App. 441, 134 So.2d 432.

The record in that case contains no transcript of testimony. The pertinent testimony on that hearing was adduced in the instant perjury trial by the State through its witness Bert Dummitt, the former official court reporter of Circuit Judge Keener Baxley.

Excerpts from Mr. Dummitt's transcription comprise State's Exhibit #1 and Defendant's Exhibit #1, which read as follows:

> "STATE'S EXHIBIT #1
>
> "Q Were you an Honorary Deputy Sheriff?
>
> "A Yes, sir, I sure was.
>
> "A I was an Honorary Deputy Sheriff. I didn't have any authority to make an arrest.
>
> "Q When was this card issued to you? When did you get it?
>
> "A Along back in the summer.
>
> "Q In the summer?

---

[1]. At common law, false personation of a peace officer—as distinguished from personation *animo furandi*—was no offense. 35 C.J.S. False Personation § 2; Russell on Crime (11th ed.), p. 1492. Georgia, unlike Alabama, has enacted against the supposed mischief. Loomis v. State, 78 Ga.App. 153, 51 S.E.2d 13. In Walker's Adm'r. v. Walker's Adm'r., 41 Ala. 353. our Supreme Court said:

> "In the absence of any proof on the subject, we will presume that the common law is, and was, in force in the State of Georgia, and that there was no statute law in conflict therewith. * * *."

See also Williams v. State, 151 Ala. 108, 44 So. 57.

"A Yes, sir.

"Q Did you show it to that lady over there that night? Did you have it with you that night?

"A Yes, I had it with me that night.

"Q But you had it with you that night?

"A I think I had it in my billfold that night, yes, sir.

"Q You say you got it back in June?

"A Yes, sir, sometime back then. It was right after school had let out."

"DEFENDANT'S EXHIBIT #1

"Q Do you usually carry this with you?

"A No, sir, I sure don't.

"Q How did you happen to get it today?

"A My wife brought it to me.

"Q Brought it to you?

"A Yes, sir.

"Q And she got it out of a file cabinet in your home?

"A I don't know where she got it. I had lost the card. It had been lost in some of my personal belongings at home."

So the State, as an initial premise, had the burden of proving to the required degree that Smith *committed* (not was "convicted of")[2] the offense of impersonating, etc.

To this end the District Attorney called E. D. Hood, a police officer of the County of Clayton, Georgia. He testified that he went to the scene of an automobile accident in the early morning hours of September 21, 1966.

Under voir dire examination Hood was asked as to giving the *Miranda* warnings to Smith whom he had brought back to the scene. Smith had been the passenger in a wrecker which turned around when it approached the wrecked cars with the police vehicle lighted.

Hood received radio information that one of the cars was registered to Smith's wife.

Hood, on voir dire, testified in part:

"Q And you had focused your investigation on Ronald E. Smith, had you not?

"A Right.

"Q And you were attempting to question him concerning facts involved in an alleged crime in Georgia, were you not?

"A We was not questioning Mr. Smith at that time.

"Q You were talking to him, weren't you?

"A We asked him to go back to the scene of the accident.

"Q All right. And you were talking to him?

"A Right.

"Q All right. And you did not advise him of his rights under the Federal Constitution, did you?

"A Didn't know anything about any rights at that time."

Defense objection was sustained.

After the noon recess, a hearing with the defendant present was held in the judge's chambers out of the presence of the jury. At the conclusion of Hood's examination, the trial judge overruled defense objection to Hood's being asked as to what Smith told him after Hood had brought Smith back to the scene.

The trial returned to the courtroom and with the jury back in the box the transcript shows (in pertinent part):

---

2. The Georgia conviction rested on a plea of nolo contendere.

"Q  Tell what was said in the presence of this defendant to him and by him there at the scene on September 21, at approximately 4:00 o'clock in the morning there in Clayton County, Georgia at the scene of that accident?

"MR. DEMENT: Your Honor, I renew my objection and I cite all the grounds that I previously cited and I particularily cite the Seagrove case, written by Mr. Justice Kohn of the Supreme Court of Alabama on May 23, 1968; and without taking this witness on Voir Dire, I developed all of my Voir Dire that I developed out of the hearing of the jury in this case, and I object, and I further object on the ground that the Corpus Delicti has not been proved separately and independently of any statement or any admission of the defendant. In fact, it has not been proved at all and I state in support of everything that I previously stated that the State has not proved the untruthfulness of the statement alleged in the indictment, therefore no admission is admissible in evidence at this time.

"THE COURT: I overrule your objection.

"Q  Go ahead.

"A  We arrived back at the scene with Mr. Smith and in our routine investigation we asked him about being a Deputy Sheriff and he stated that he was a Deputy Sheriff in Cobb County.

"Q  In where?

"A  Cobb County.

"Q  Cobb County, Georgia?

"A  Yes, sir. And we told him we would check with Sheriff Kermit Sanders in Cobb County to see if he was a Deputy and he changed his mind and didn't want us to check and he said he was not a Deputy Sheriff.

"Q  That was this defendant Ronald Smith who said that?

"A  Yes, sir.

"MR. BAXLEY: Your witness.

"CROSS EXAMINATION

"by Mr. DeMent:

"Q  Mr. Hood, have you read this indictment?

"A  No, sir.

"Q  Are you aware of the fact that it charges the defendant with falsely swearing that he was an Honorary Deputy Sheriff?

"A  I don't know about him being an Honorary Deputy Sheriff.

"Q  Your only conversation had to do with his being a Deputy Sheriff, is that right?

"A  That is true.

"Q  From your knowledge in Georgia is there any difference between a Deputy Sheriff and an Honorary Deputy Sheriff?

"A  Yes, sir.

"Q  How much difference?

"A  Well, a Deputy Sheriff is paid and an Honorary Deputy pays to be an Honorary.

"Q  What did Honorary Deputy Sheriffs do?

"A  Not much of anything.

"Q  Is it just a courtesy or honor?

"A  Yes, sir, more or less.

"Q  They don't have any duties do they?

"A  No, sir.

"Q  They don't make arrests?

"A  Not as I know of.

"Q  They don't serve papers?

"A  No, sir.

"Q  They don't wear uniforms?

"A  No, sir.

"Q They don't get paid by the State or the County?

"A No, sir.

"Q They don't keep regular hours or any hours with the Sheriff's department?

"A No, sir.

"Q And you testify that all of your conversations with this defendant was to the effect of his being a Deputy Sheriff?

"A Yes, sir.

"Q And there was nothing mentioned to you about Honorary Deputy Sheriff?

"A Not that I can recall, no, sir.

"Q All right. Now, do you know whether or not the defendant was in fact an Honorary Deputy Sheriff in September of 1966?

"A No, sir, I do not.

"Q You can't tell this jury that he was not, can you?

"A No, sir.

"Q Do you know whether a card commissioning him as an Honorary Deputy Sheriff in Long County, Georgia, had been issued to him in the previous summer?

"A No, sir, I do not.

"Q And I am reading from the indictment for the record. You don't know that either?

"A No, sir, I do not.

"Q So you can't say that he swore falsely that a card was issued the previous summer in Long County, Georgia, can you?

"A No, sir.

"Q Do you know whether or not he had that card with him on September 21, 1966?

"A I do not.

"Q And you can't swear that he didn't in fact have that card with him on September 21, 1966, can you?

"A No, sir, I cannot.

"MR. DEMENT: Your Honor, we move for a mistrial and we assign all the grounds we assigned on our objection to the admissibility of this evidence, or testimony, plus the further ground that testifying about a Deputy Sheriff as opposed to an Honorary Deputy Sheriff has nothing to do with this indictment. This indictment reads, 'Honorary Deputy Sheriff', and that the testimony elicited from the witness stand is so prejudicial to this defendant that it cannot be eradicated from the minds of the jury by instructions from the Court, and we move for a mistrial.

"THE COURT: And I overrule your motion. All right.

"REDIRECT EXAMINATION

"by Mr. Baxley:

"Q Officer Hood, did the defendant Ronald Smith offer to show you any type card that night?

"A No, sir.

"Q Did you see any type card that he had on him?

"A No, sir.

"MR. BAXLEY: No more questions.

"THE COURT: Anything further, Mr. DeMent?

"MR. DEMENT: No, sir."

The State then called Mr. Albert Hicks, a detective for the City of Dothan. In January 1968 he went to the office of the Clerk of the County Court of Clayton County, in Jonesboro, Georgia. Over objection, Hicks testified that he there found a case made at some unspecified date against Ronald Edward Smith on a charge of impersonating an officer. A fine of $25.00 was paid after a plea of nolo contendere.

The defense, in addition to objecting, moved for mistrial on the ground that a plea of nolo contendere "is limited to the particular case and has no effect outside the case." In addition, Smith's counsel moved to exclude all of Hicks's testimony on the same ground. Both motions were denied.

Over objection, C. R. Thornton, another police officer of Clayton County, was allowed to state that after arrest[3] and at the time of his being released at 7:00 a. m., Smith stated that he was neither a regular nor an honorary deputy sheriff. This admission was shown to have been made with the usual pre-*Miranda* predicates having been laid. However, no *Miranda* warnings were given, though counsel's objection assigned "all my previous grounds."

Next, the prosecution presented D. R. Terry, a Montgomery officer, who in 1967 went to Smith's home in Marietta. The object of the visit was twofold; first, to investigate the breaking and entering of the Bellas-Hess store in Montgomery and also to bring Smith back to answer a citation for revocation of his probation in the Houston Circuit Court.

There is no question but that Smith was placed under arrest. Terry and his superior enlisted a Georgia officer to serve their warrant to bring Smith back to Alabama. Terry—over objection—testified that Smith said that he was not a deputy sheriff. Again no *Miranda* warnings were proved.

■ This statement was in "conversation" with the Georgia deputy sheriff. In view of the State's taking care to prove the statement voluntary by ante-*Miranda* standards and of the use of the word "conversation," we consider that the statement was elicited by "interrogation." R. pp. 148-151.

The statement made in 1967 at Marietta was ex post facto the 1966 Clayton County

personation conviction. Yet the setting was on Smith's departure to Alabama to face probation revocation. · See Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, for an analogous setting.

The State's last witness as to inculpatory admissions made by Smith was Mr. Clyde Peterson, Parole and Probation Supervisor for the 20th Judicial Circuit. As such, under Code 1940, T. 42, § 23, he has the same powers of arrest as a sheriff.

After laying the predicates of voluntariness a la ante-*Miranda*, the State adduced through this witness that on the 3rd of March 1967, in the Houston County Jail, Smith " * * * admitted to me at that time that he did tell the woman victim that he was an Honorary Deputy Sheriff; but he admitted to me in the same conversation that he was not a Deputy Sheriff of any sort at the time he told this woman he was."

Beforehand, on voir dire by defense counsel, Mr. Peterson testified that he had not given Smith the warnings called for by *Miranda*. Objection was made and overruled.

At that time Smith was alone with Peterson. There is no proof as to whether or not Smith had an attorney. Nor is there anything in the record of the former Court of Appeals of Smith's appeal from revocation of probation as to whether Smith had a lawyer in this earlier proceeding.

II

■ We consider that Smith was due the *Miranda* warnings from Hood, Thornton, the officers at the Cobb County jail in Marietta, Georgia, and Mr. Peterson. We consider that under Miranda v. Ariz., 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381; Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311; Seagroves v. State, 282 Ala. 354, 211 So.2d 486; Howard v. State, 44 Ala. 595, 217 So. 2d 548; and Livingston v. State, 44 Ala. App. 559, 216 So.2d 731 there is no doubt

---

3. No lawyer was present. No evidence was given that Smith had already pled nolo contendere.

as to Smith's being in custody. We note that in each instance the State thought it necessary to show the admissions to be voluntary by the common law predicates required before *Miranda*.

We do not hold that a probation officer is required to give the *Miranda* warnings before a convicted person's parole or probation is revoked. All that we hold here is that if the interview in jail is to be used as part of a separate perjury prosecution, inculpatory admissions therein are indistinguishable from those presented otherwise. This too covers the statement elicited through the testimony of witness Terry.

## III

■ Without our going into whether or not the best evidence rule required compliance with Code 1940, T. 7, § 427.[4] the testimony of Mr. Hicks was subject to objection. A plea of nolo contendere is inadmissible in evidence in another proceeding. May v. Lingo, 277 Ala. 92, 167 So.2d 267.; State ex rel. Woods v. Thrower, 272 Ala. 344, 131 So.2d 420; Fidelity—Phenix Fire Ins. Co. of New York v. Murphy, 231 Ala. 680, 166 So. 604; Wright v. State, 38 Ala. App. 64, 79 So.2d 66, 68.

## IV

■ In perjury proof is not enough if it is merely the defendant's oath against that of another. Otherwise stated, a conviction cannot be had on the uncorroborated testimony of a single witness. Peterson v. State, 74 Ala. 34; Capps v. State, 29 Ala. App. 192, 194 So. 689(4).

4. See Warren v. Peppers, 31 Ala.App. 394, 17 So.2d 585:
"* * * We know of no rule of law or of evidence that permits the authentication of a judgment rendered by a court of a sister state to be shown by the oral testimony of a practicing attorney from the sister state in which said judgment purports to have been rendered.
"It is the opinion and judgment of this court that no legal evidence was intro-

## V

■ We cannot apply Supreme Court Rule 45 here for two reasons. First, under that rule's wording this record shows errors which "probably injuriously affected substantial rights" of the appellant. Second, the harmless error doctrine is variantly worded where a Federal constitutional error intervenes. Chapman v. Calif., 386 .U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705; Harrington v. Calif., 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284.

Thus, we cannot say that "beyond a reasonable doubt that the probable impact of the inculpatory statements and the Georgia judgment on the minds of an average jury would have been harmless." We find no need to decide whether *Chapman* and *Harrington*, supra, preempt harmless error to the exclusion of Supreme Court Rule 45.

The judgment below is due to be reversed and the cause remanded for a new trial.

Reversed and remanded.

ALMON, Judge, concurring in part and dissenting in part.

The majority predicates its reversal in part upon the officers' failure to give the *Miranda* warnings to Smith. The officers questioned him prior to his probation revocation hearing. Smith is charged with prejuring himself at the revocation hearing.

The manifest reason for the rule in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct.

duced in the court below of the existence of the judgment of the Superior Court of Chattahoochee County, Georgia, pleaded as res adjudicata in the case at bar, and that the trial court acted correctly in ignoring and disregarding the purported judicial record from the Georgia court. * * *."
But compare King v. State, 36 Ala.App. 368, 56 So.2d 379(2).

1602, 16 L.Ed. 694, is to prevent coerced confessions and inculpatory statements.

How could law enforcement officers coerce a confession, etc., to a crime when the crime had not yet been committed?