254 So.2d 434

**William Edward Ashby DANNELLY, Jr.**

**v.**

**STATE.**

**2 Div. 57.**

Court of Criminal Appeals of Alabama.

Aug. 17, 1971.

Rehearing Denied Sept. 14, 1971.

**364**

Pitts, Pitts & Thompson, Selma, L. Y. Sadler, John Godbold, Camden, for appellant.

William J. Baxley, Atty. Gen., and David W. Clark, Asst. Atty. Gen., for the State.

CATES, Judge.

First degree murder (for killing his father): sentence, life imprisonment. In addition to the general issue the defendant also pled not guilty by reason of insanity.

### I

The defense moved for a change of venue because of: (1) the deceased's prominence in Wilcox County; (2) the alleged abnormal newspaper and television publicity as to the killing; (3) the assignment (before formal arrest) of a highway patrolman to attend the defendant; and (4) the publication "by various news media desseminated in Wilcox County" of the report of Bryce Hospital's lunacy commission.

This motion was overruled after a lengthy hearing. This ruling is the defendant's first claim of error.

▇ The State in brief cites Ala. Digest, Criminal Law, ☞134(1) as well as Tiner v. State, 271 Ala. 254, 122 So.2d 738 for the proposition that the defense has the burden to prove to the court's reasonable satisfaction that an impartial trial cannot be had in the circuit court to which the indictment is returnable.

We note that the publicity cited in (2), (3) and (4) above was fairly well shown to have been also disseminated in the adjoining counties. "Modern" communications no doubt have created the perplexity of where venue can be changed to.

In the instant case both parties adduced proof pro and con as to the possibility of a fair trial in Wilcox County. In this posture we find no abuse of judicial discretion in the trial judge's ruling on the motion to change venue.

Also, we call attention to the fact that trial was delayed until September 29 whereas the deceased was killed some nine months beforehand, i. e., January 5, 1969. The passage of time cannot be ignored as a factor in bringing objectivity to the trial.

### II

▇ The second contention involves the applicability vel non of the exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081. This entails an analysis of the factual setting.

The State offered in evidence a shotgun which a toxicologist opined had fired at least one spent shell found on the roadside leading from the deceased's home toward Camden, the county seat. The gun undisputedly belonged to the defendant.

The deceased was shot five times. He was found in bed at his home clad in pajamas. The Sheriff looking for guns asked the defendant if there were any other guns in the house. The defendant said, "Yes, sir, my gun." With that he handed the Sheriff the shotgun of instant concern.

As was said by Judge Harwood in Kelley v. State, 39 Ala.App. 572, 105 So.2d 687:

"A search implies a probing into secret places for that which is hidden, People v. Exum, 382 Ill. 204, 47 N.E.2d 56; it implies force, actual or constructive, Com-

best v. State, 32 Okl.Cr. 47, 239 P. 936; or a forcible dispossession of the property of the owner by exploratory acts."

Certainly here there was no search. The seizure of the gun came about by a voluntary manual delivery of it by the defendant. We find no error.

### III

■ The third contention is posed as:

"The court committed reversible error in allowing the defendant's uncle to testify as to a confession which was made at Bryce Hospital."

The defendant, under Code 1940, T. 15, § 425, was sent to Bryce Hospital. There he remained under observation from January 28 until August 14, 1969.

June 18 his uncle, Pat Dannelly, visited him. During the course of the visit the State (after establishing the necessary predicates of voluntariness) brought out from the uncle's testimony the following:

"Q (BY MR. ASHWORTH:) What did he say? Did he say something to you?

"A He did.

"Q What did he say?

"A He said, 'I guess you are like everybody else, came up here to hear—to question me and see if you can find out anything about what happened.'

"Q Now, did you say anything to him?

"A I told him that I did not come up there to question him, to dig him, or in any—or try to find out anything about it. But that I came up there to see him.

"Q Did he say anything to you after you made that statement?

"A He did.

"Q What did he say?

"A He said, 'Well, I know you are like the rest of them, and I will tell you what happened.'

"Q What did he say?

"A He said, 'I killed him'; that, 'I shot him five times and I killed him.'

"Q Did he give you any of the details about how he did it?

"A He said he was in his room, and that he came in there with the shot gun, shot him twice, the gun shot twice, then he reloaded and then shot him three more times."

The defendant in brief collates the following: 1. the defendant was seventeen years of age; 2. he was being given Mellaril, a tranquilizer; 3. his mother had been transferred to Bryce Hospital for some unspecified emotional disorder; 4. the defendant had been harassed by having a highway patrolman escort him before his incarceration; 5. two defense experts, one a psychologist, the other a psychiatrist, diagnosed him as a paranoid schizophrenic; and, 6. the defendant had been isolated and subjected to long periods of questioning (so it is said) though by whom we are not told.

At the outset in this setting we hold that though the defendant was undoubtedly in custody, his interrogator (if the uncle could be so called) was not an officer of the law nor an agent of such officers.[1] See Truex v. State, 282 Ala. 191, 210 So.2d 424; Carr v. State, 44 Ala.App. 661, 219 So.2d 646.

Escobedo v. Illinois, 378 U.S. 478, 84 S. Ct. 1758, 12 L.Ed.2d 977 relates only to the confessorial contamination caused by improper action by the police who are aware, actually or constructively, that the accused has a lawyer. *Escobedo* has been given a

[1] "The settled principle is that not every conversation between police and accused is unlawful. * * * The outburst to the detective which exposed Robles' involvement was not the simple negative response which was all the remark called for, but an impetuous unbosoming of his implication in the crime * * *." People v. Robles, 27 N.Y.2d 155, 314 N.Y.S. 2d 793, 263 N.E.2d 304.

narrow construction by the Alabama courts. Taylor v. State, 282 Ala. 567, 213 So.2d 566; Smith v. State, 282 Ala. 268, 210 So.2d 826 (10); Harris v. State, 280 Ala. 468, 195 So.2d 521; Beecher v. State, 280 Ala. 283, 193 So.2d 505; Wright v. State, 279 Ala. 543, 188 So.2d 272; Tiner v. State, 279 Ala. 126, 182 So.2d 859; Lokos v. State, 278 Ala. 586, 179 So.2d 714; Sanders v. State, 278 Ala. 453, 179 So.2d 35; and Duncan v. State, 278 Ala. 145, 176 So.2d 840 (27).

In Davis v. State, 44 Ala.App. 145, 204 So.2d 490 the former Court of Appeals per Johnson, J. applied the totality principle to reverse because of the circumstances surrounding the eliciting of two confessions. The opinion commented:

"However, here, in addition to appellant's rather extended imprisonment before confessing, we have a number of other coercive factors. We list the following:

"a) At the time of his arrest, appellant was seventeen years old.

"b) He was only booked by the Prichard police on a charge of 'hold for investigation'.

"c) He was held in Prichard City Jail for five days during which time a State witness stated that he confessed.

"d) On release from the Prichard custody, appellant was delivered to the Mobile police and was kept in the city jail for seven days.

"e) Appellant was booked in Mobile on a charge of 'investigation of robbery'; the complaining witness had not been asked to sign a 'John Doe' complaint.

"f) During these seven days he twice confessed.

"g) At no time either in Prichard or Mobile during the detention was appellant brought before a committing magistrate.

"h) No cautions, warnings or advice as to rights to see friends, family, counsel or just remain silent are shown."

Here the only similarity is that Dannelly was of the same age as *Davis*. However, comparative youth alone is not an exclusively controlling factor in assessing the environment of an inculpatory statement. See Curry v. State, 203 Ala. 239, 82 So. 489. For a post-*Miranda* case involving the confession of a fifteen year old, see Seagroves v. State, 282 Ala. 354, 211 So.2d 486.

The defendant, according to this record, first broached the killing of his father. Nowhere does it appear that the uncle questioned the defendant; rather the defendant in an apparently hostile outburst flung the statement at his uncle.

As to the use of Mellaril it was not brought out in chief that Bryce Hospital had administered this phenothiazine derivative to the defendant. Rather to rebut the defendant's proof to support his plea of not guilty by reason of insanity the State put Dr. Sam Darden on the stand. He testified as to his observation of the defendant at Bryce Hospital.

In the course of his cross examination he stated that the defendant was given an unspecified dosage of, first, Sparine (also a phenothiazine derivative) and later this was changed to Mellaril.

This latter tranquilizer or central nervous system suppressant he described as being routinely prescribed to reduce anxiety and tension making the patient more relaxed. It is inferable from Dr. Darden's testimony that the dosage given the defendant would not distort judgment or inhibitory mechanisms.

In Edwardson v. State, 255 Ala. 246, 51 So.2d 233 the City physician gave the incarcerated defendant two quarter-grain tablets of codeine and on leaving the city jail told a police officer that "She [the defendant] was talkative and they might go up there and talk with her." Shortly thereafter the defendant confessed. The administration of this narcotic was one of the causes of reversal.

In Dennison v. State, 259 Ala. 424, 428, 66 So.2d 552, 555 we find:

"It is true the defendant may have been somewhat weakened by having taken the sleeping pills some nine days previously, but there is no evidence to indicate in the slightest that she was not in full use of her mental faculties or that the confession was induced by any kind of duress or promise. In this connection it is to be observed that the voluntariness of a confession is not affected by the fact that the accused was not in full possession of her faculties, although that is a circumstance to be considered by the jury in weighing its verity. Vinzant v. States, 28 Ala.App. 220, 180 So. 736; Smith v. State, 25 Ala. App. 297, 145 So. 504; * * *"

We do not think the holding in Warren v. State, 44 Ala.App. 221, 205 So.2d 916 is pertinent here.

Thorazine (chlorpromazine) apparently a phenothiazine derivative, was administered in an inordinate dose to a prisoner with a blood alcohol level of about .18 per cent in the pre-*Miranda* case of In re Cameron, 68 Cal.2d 487, 67 Cal.Rptr. 529, 439 P.2d 633. Thorazine is contraindicated for persons who are under the influence of alcohol because of potentiation between the two. The court, per Traynor, C. J., said that "rational intellect and a free will" are the requisites of the voluntary confessant citing Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242.

*Cameron*, supra, was distinguished in People v. McFadden, 4 Cal.App.3d 672, 84 Cal.Rptr. 675.

In Alabama the order of proof as to the admissibility of a confession requires that the predicatory investigation, usually with the jury withdrawn, affords the only opportunity for the defendant as well as the State to adduce proof on the legality (admissibility, voluntariness) of the question. Evidence coming in after the trial judge has conducted his threshold investigation and announced his ruling as required by Sims v. Georgia, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 [2] goes only to the weight which the jury might accord the confession in all its surrounding facts.

In Vernon v. State, 239 Ala. 593, 196 So. 96 we find:

"Extrajudicial confessions of guilt by an accused on trial for crime are prima facie involuntary, and the burden rests upon the state to overcome this prima facie infirmity by evidence satisfactory to the court trying the case that the confession was voluntarily made, before such confession can be received in evidence. It is the right of the accused to controvert evidence offered in laying such predicate by cross-examination, or by evidence aliunde, but such countervailing evidence impeaching the predicate to be successful must be offered on the voir dire, before the confession is admitted. Lockett v. State, 218 Ala. 40, 117 So. 457; Cook v. State, 16 Ala.App. 390, 78 So. 306; Pope v. State, 183 Ala. 61, 63 So. 71; Jackson v. State, 83 Ala. 76, 3 So. 847.

"If such countervailing evidence is not offered until after the preliminary question of the admissibility of the confession is passed on by the court *it goes to the jury on the credibility of the confession only.* Lockett v. State, supra; Cook v. State, supra." (Italics added).

See also White v. State, 260 Ala. 328, 70 So.2d 624; Lokos v. State, 278 Ala. 586, 179 So.2d 714; Howard v. State, 44 Ala. App. 595, 217 So.2d 548.

It requires but slight reflection to realize that the foregoing rule promotes orderly administration of the trial. Otherwise, the judge could in theory be required to with-

**2.** Our cases consider that *Sims,* supra, is complied with by any action of the trial judge in allowing the confession to be heard by the jury; or where the defendant has not asked for the withdrawal of the jury the judge's action in letting the confession stay in evidence manifests a ruling on the legal question of voluntariness.

draw or possibly (after various countervailing hearings) withdraw and later resubmit a confession which had previously been admitted for the jury's prior consideration.

However, this procedural nicety is no longer wholly valid. In Blackburn v. Alabama, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 reversing our former Court of Appeals the opinion clearly requires the trial judge to exclude a confession from the jury at any stage of the trial where the involuntariness is conclusively demonstrated. The court per Warren, C. J., said at pp. 209–210, 80 S.Ct. at p. 281:

> "We take note also of respondent's argument that our decision must be predicated solely upon the evidence introduced by defendant before admission of the confession. As we have indicated, this evidence consisted of the depositions, the copies of the documents incorporated therein, and the testimony of the Chief Deputy. *The other relevant evidence, which included the detailed medical record of Blackburn's mental illness prior to his arrest, was introduced at a later stage of the trial.* It is quite true that Blackburn's counsel, so far as the record shows, made no request that the judge reconsider his ruling on the basis of this additional data. The Alabama Court of Appeals decided that under these circumstances this further documentation of Blackburn's insanity was not, under state law, material to the Fourteenth Amendment question.
>
> " * * * But we reject the notion that the scope of our review can be thus restricted. Where the involuntariness of a confession is conclusively demonstrated *at any stage of a trial,* the defendant is deprived of due process by entry of judgment of conviction without exclusion of the confession. * * *" (Italics added).

Hence, under *Blackburn,* supra, the rule as to tardy evidence to contradict voluntariness must now be confined to those cases where there is not a *conclusive*

demonstration of involuntariness. To this extent cases such as *Vernon,* supra; and *Lokos,* supra, contain incorrect or overly broad statements of present law. Redwine v. State, 258 Ala. 196, 61 So.2d 724 has perhaps been reduced to a holding resting on its own peculiar facts with little viability as a precedent.

We have adverted to the Annotation 69 A.L.R.2d 384 and its supplements also, (in addition to the cases above dealing with alleged induced confessions) to the discussion in Townsend v. Sain, 372 U.S. 293, pp. 307–309, 83 S.Ct. 745, 9 L.Ed.2d 770, as to the effect of scopolamine or hyoscine. In Vinzant v. State, 28 Ala.App. 220, 180 So. 736, the court borrowed the rule relating to "intoxication less than mania" to dispose of an alleged sedative induced confession.

We conclude from the pattern of cases that tranquilizers not administered with other potentiating drugs are prima facie innocuous as affecting the rational and volitive faculties. In other words the defense has the onus of persuasion to show an overbearing of the will. See State v. Alvis, 70 Wash.2d 969, 425 P.2d 924:

> "There is no evidence that these tranquilizers were more than the usual nerve depressant, or that they in any way affected the intellectual processes of the defendant."

One of the claimed infirmities of the defendant's mental competence to confess (with efficacy enough to let the admission be heard by the jury) arose from the alleged mental or emotional illness of the defendant's mother.

Mrs. Dannelly had been a patient in Hillcrest Sanatorium, a private mental hospital in Birmingham. She had been home during the Christmas holiday 1968 but had returned shortly thereafter. Apparently on or shortly before January 5, 1969 (the date of death) Judge Dannelly had decided to have Mrs. Dannelly transferred to Bryce Hospital.

No testimony was given as to her symptoms other than in the testimony of defense psychiatrist Dr. Claude Brown. Therein he made reference to the sleeping arrangements of the Dannelly family and that at some prior time Mrs. Dannelly had taken up a separate bedroom because her husband's snoring annoyed her. The defense brought out nothing further as to the mother to support the thesis of folie à deux—though there was considerable evidence of the defendant's ambivalence toward his father; also inferably of the defendant's going from one parent to another.

Aside from this rather shadowy sketch of the interpersonal relationships in the family trio there is nothing substantial as to symbiotic attachments between mother-son or son-father, nor of an emotional gap between parents.[3] This claimed factor of the mother's instability affecting the son is not substantially supported in the record.

As to the defendant's being escorted by a highway patrolman nothing sinister or prejudicial appears. As a factor affecting a confession made several months later it is negligible.

The defense had expert witnesses to establish opinions of insanity. The State called Dr. Darden who testified that he considered the defendant sane at the time of the killing and at the time of the sitting of the sanity commission.

In this connection a distinction must be made between the burden on the preliminary voir dire hearing as to the admissibility of the confession and the enquiry as to

the burden on the defendant to clearly prove his insanity to the reasonable satisfaction of the jury as laid down in Code 1940, T. 15, § 422.

In the former case the defense would have to conclusively demonstrate that the confession was involuntary under *Blackburn,* supra. Otherwise the testimony of the defense experts was available as to whatever credibility, if any, which the jury might accord the confession but not as to its legal admissibility for the jury to hear.

This does not detract from that expert testimony on the plea of not guilty by reason of insanity. However, a jury is not bound by expert testimony.

That the defendant was isolated and subjected to unduly long interrogation is not borne out by this record.

In conclusion, as to the confession we consider that the defendant has not brought himself within the exception stated in *Blackburn,* supra. Therefore, on the evidence before the trial judge, indulging the statutory presumption of sanity in § 422, supra, and in view of the State's proof to establish the freedom from fear, coercion, inducement, promises or threats to or in the presence of the defendant, we hold there was no error in the court's ruling that the jury might hear the confession.

## IV

During closing argument to the jury the assistant prosecutor remarked as to what might transpire should the jury

3. See Bowen, A Family Concept of Schizophrenia, The Etiology of Schizophrenia, 346–372, wherein at 366 the author states:
"The main threat to the continuation of the mother-child symbiosis is the growth process in the child. * * * Described as a phenomenon, the symbiosis attempts to make two lives stand still at a particularly pleasurable phase in both life cycles. * * *
"* * * The rapid growth of the child at adolescence interferes with the functioning equilibrium of the interdependent triad. There is an increase in anxiety for all three members. The automatic mechanisms of the mother—and also the father—go toward forcing the child back into a more helpless position, * * *. The adolescent period is one in which the growth process repeatedly upsets the equilibrium and the emotional process attempts to restore it. * * *."

find the defendant not guilty by reason of insanity. The record shows:

"MR. MCLEAN PITTS: Your Honor, wait a minute now, I object to the statement.

"THE COURT: What was the statement?

"MR. MCLEAN PITTS: I object to the statement by the solicitor, 'If you believe beyond a reasonable doubt that he was insane, then you turn him loose.'

"THE COURT: Wait now. If he believes what?

"MR. MCLEAN PITTS: 'Beyond a reasonable doubt that he was insane.' That is not the proof on the plea of insanity.

"THE COURT: That is right—if they are reasonably satisfied.

I will sustain that he doesn't have to prove it beyond a reasonable doubt, but to the reasonable satisfaction.

"MR. BONNER: To your reasonable satisfaction. Go back to your two choices * * *.

"MR. MCLEAN PITTS: Wait a minute, I object to that statement.

"THE COURT: You cannot discuss what the Lunacy Commission says. You have got to stay with Dr. Darden. I sustain the objection to that.

"MR. MCLEAN PITTS: I move for a mistrial.

"THE COURT: Overruled, and I instruct this jury not to regard that statement by the county solicitor; to disregard it.

"MR. MCLEAN PITTS: I move for a mistrial * * *.

"MR. BONNER: You heard the testimony of Dr. Darden. You heard Dr. Sam Darden. If he is acquitted, then he is turned loose. He doesn't go back to Bryce's.

"MR. MCCLEAN PITTS: I object to that statement. I object to that statement.

"THE COURT: Yes, sir.

"MR. MCLEAN PITTS: I object to that statement again, that if he is acquitted he doesn't go back to Bryce's. I object to that statement.

"THE COURT: Let's get exactly what you said.

"MR. MCLEAN PITTS: He said, 'If he is acquitted, he will not go back to Bryce's.' He said, 'Does not go back to Bryce's.' He said, 'Will not go back to Bryce's.'

"THE COURT: This jury is not concerned with what happens to this defendant after they write their verdict. You cannot argue that in this case, what will happen to him after they write their verdict.

They are only concerned with their verdict, and that alone.

I instruct this jury to disregard this statement by the county solicitor as to what happens to him.

"MR. MCLEAN PITTS: Your Honor, he has given the impression to the jury that if this man is acquitted because of the insanity plea, that he is free, and that is not true.

"THE COURT: Well, that is—they are not concerned with [what?] happens to him after that.

"MR. BONNER: Withdraw that, Your Honor.

"MR. MCLEAN PITTS: I renew my motion.

"THE COURT: I say to you jurors, you must not speculate on what happens to him after your verdict.

"MR. MCLEAN PITTS: Renew my motion.

"THE COURT: I overrule your motion for a mistrial." (Bracketed matter supplied).

In Wise v. State, 251 Ala. 660, 38 So.2d 553 we find the following:

"The solicitor in his argument to the jury stated: 'If he is insane, don't convict him, but if they put him in Bryce's, perhaps he may be back here in a few months.' Objection to this was overruled, and exception noted. The Court made no comment to the jury in that respect.

"We have often disapproved such argument. Originally it was held not to be reversible to overrule objection. McNeill v. State, 102 Ala. 121, 15 So. 352, 48 Am.St.Rep. 17. We have held that when objection is sustained or the jury properly instructed as to it, the error may be cured. Pilley v. State, 247 Ala. 523, 25 So.2d 57; Oliver v. State, 232 Ala. 5, 166 So. 615; Peterson v. State, 231 Ala. 625, 166 So. 20; Boyle v. State, 229 Ala. 212, 154 So. 575; Bachelor v. State, 216 Ala. 356, 113 So. 67; Anderson v. State, 209 Ala. 36, 95 So. 171.

"But when objection is made and overruled, and the court does not properly instruct the jury in respect to the argument, our cases now hold that it is reversible error. Boyle v. State, supra.

"We think this case is not materially different in this respect from the Boyle case, supra, and that there was reversible error in overruling the objection to the remark of the solicitor."

We have examined the record as required by Code 1940, T. 15, § 389 and consider that the judgment below is due to be

Affirmed.

## ON REHEARING

Specifically we distinguish the instant case from Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600.

As to the lunacy report's being inadmissible, we are not aware that the rule ascribed to Benton v. State, 245 Ala. 625, 18 So.2d 428, would necessarily have made the lu-

nacy commission's report inadmissible *under all conditions*. See Ward v. State, 44 Ala. App. 229, 206 So.2d 897; and Stinson v. State, 45 Ala.App. 5, 221 So.2d 397.

The other points briefed on application for a rehearing we consider to have been sufficiently covered in the original opinion.

Application overruled.